## McCORMICK v. STONEBRAKER.

No. 17517.   Opinion Filed Jan. 31, 1928.

Rehearing Denied Oct. 16, 1928.

H. B. Martin, Christy Russell, and C. A. Warren, for defendant in error.

Lynn & Spradling and Thomas D. Lyons, amici curiae.

LEACH, C. Howard M. Stonebraker, as plaintiff, filed this action in the district court of Tulsa county on March 24, 1913, against I. R. McCormick, alleging in his petition that he was the owner of the legal and equitable title to the southeast quarter, section 22, township 19 north, range 13, E. I. M; that the defendant unlawfully kept him out of possession of the premises; and prayed judgment for the possession.

Defendant, McCormick, answered by general denial, and for further answer and cross-petition stated he was the owner of the lands in fee simple, and in actual, peaceable, and notorious possession of the lands: that plaintiff claimed some right or interest adverse to defendant's title, and prayed that defendant's title to the lands be quieted, and plaintiff barred and enjoined from setting up or maintaining any claim to the lands.

Upon a trial of the issues to the court on November 7, 1925, certain findings of fact were made by the court, and judgment rendered in favor of plaintiff, awarding him title and possession of the lands, and the defendant, as plaintiff in error, appeals and brings the cause here for review.

The parties will be referred to as they appeared in the trial court.

The land involved in this action was allotted to the heirs of Katie Starr, a full-blood Creek Indian, who died prior to the allotment. She left surviving her as her sole and only heirs, Chesley Starr, her husband, and Amy Grayson and Wiley Grayson, children by a former husband, all full-blood Creek Indians. Amy Grayson died in June, 1905, leaving Wiley Grayson, her brother, as her sole heir; and all the heirs were said to be dead at the time of the trial of this action. The land was unrestricted from sale and conveyance prior to the Act of Congress of April 26, 1906. After the Act of Congress of 1908, the land was subject to sale when approved by the county judge of proper county.

Thirteen assignments of error are embodied in petition in error filed herein, and with the exception of the assignments alleging erroneous overruling of motion for new trial and admission of evidence, all are based upon the grounds that the findings of fact and judgment were not supported by the evidence, and the judgment contrary to law.

Biddison & Campbell, for plaintiff in error.

The findings of fact and conclusions of law made by the trial court are as follows:

## "Finding of Fact.

"The quarter section of land in controversy belonged to that class of land which was unrestricted up to the Act of 1906.

"While it was unrestricted, the plaintiff on February 19, 1902, made a contract with the heirs of Katie Starr to purchase this land, at which time plaintiff paid $120 on the purchase price, and took a receipt from Chesley Starr, showing that this amount was paid as part of the consideration of the $500 agreed to be paid by plaintiff for this land, the receipt providing that the balance of $380 should be paid on delivery of the deed.

"On December 31, 1903, plaintiff took a rental contract on the land to run for five years.

"Plaintiff went into possession about the time of this contract, and fenced the land and used it for the purpose for which it was best suited, that is, a grazing pasture for cattle. His possession was continuous, open, notorious, adverse and uninterrupted until he was dispossessed by a restraining order which the defendant secured in 1910.

"Plaintiff, during the course of his occupancy and possession, took deeds from the heirs of Katie Starr pursuant to his contract of purchase made February 19, 1902, and paid the balance of the consideration.

"The evidence is very uncertain as to whether plaintiff ever got a deed from S. R. Lewis as claimed at the trial, but the court is inclined to believe he did.

"The defendant bought this land from one Randolph and took a deed to it August 25, 1909, and traces his alleged title through certain intermediate conveyances back to the heirs of Katie Starr.

"Defendant took possession of the lands under an order of court secured upon an ex parte hearing in a case which he dismissed before a hearing was had on the merits."

## "Conclusions of Law."

"The court finds, as a matter of law that the plaintiff is entitled to be protected in his possession, held under his purchase of 1902, which was later consummated by deeds from heirs of Katie Starr; that his possession and improving and using the land was notice to the world of his rights; when defendant took deeds to the land, he had this notice.

"The court further finds that the conveyance, secured in the manner it was, as above set out, was wrongful, and conferred no rights upon him against the plaintiff, and that the plaintiff is therefore entitled to be restored to the estate and possession of said land.

"Luther James, Judge."

The rule is established that where a case is tried by the court without intervention of a jury, if the finding of fact and judgment are reasonably supported by the evidence, the judgment will not be disturbed on appeal. Simmons v. Maxey, 106 Okla. 252, 233 Pac. 669; Myers v. Denison, 104 Okla. 208, 230 Pac. 742; Thompson v. Smith, 102 Okla. 150, 227 Pac. 77.

It appears the principal question here is: Whether the findings of fact and conclusions of law are reasonably supported by the evidence.

"In a statutory action in the nature of ejectment, plaintiff can recover only by showing either a legal or equitable title in himself and the right of possession." Jennings v. Brown, 20 Okla. 299, 94 Pac. 559; Warner v. Coleman, 107 Okla. 292, 231 Pac. 1053.

"It is the right of possession between the parties in an action in ejectment that is tried, and this right of possession is the title that is to be adjudged in the trial." McElroy v. Moose, 51 Okla. 173, 151 Pac. 857.

The testimony in support of the findings of the court, upon the question of the purchase of the lands by the plaintiff, was largely that of the plaintiff and the witness Lynch, who testified, in substance, that as agent of the plaintiff he assisted one Davis in getting the title to the land in question, together with other lands; that he wrote and saw subscribed the receipt introduced in evidence, which was as follows:

"Tulsa, I. T. Feb. 19, 1902.

"Received of H. M. Stonebraker one hundred & twenty no-100 dollars apply on purchase of 160 acres land located S. E. sec. 22, township 19, range 13, E. Bal. $380 to be paid on delivery of deed.

"Chesley Starr."

Witness did not recall the details about it, thought Starr was to get $500; $120 was paid, otherwise he would not have drawn up the receipt; Mr. Stonebraker furnished the money; said his testimony was largely conclusive based upon the receipt.

The plaintiff, Stonebraker, testified in part that one Davis acted on behalf of the Indians in the sale of the land; that the witness Lynch took part in the negotiations; that he, plaintiff, personally met the Indian heirs, and closed the deal in Lynch's office; his recollection was that he was to pay $800 for the land, $5 per acre; that the Graysons could talk English, but Starr could

not; his recollection was that one-third of the money was paid to each heir; deeds were made separately on account of the homestead; he paid every dollar of the consideration; he was not certain whether he was present in 1902 when the receipt was taken.

As to the question and finding of the court that the plaintiff was in continuous, open and notorious possession of the lands until he was dispossessed by restraining order secured by defendant, the record discloses that one Shurtliff leased the land, together with adjoining lands, from the plaintiff, Stonebraker, about the year 1903; that a fence was constructed on two immediate sides of the land involved, and the land was entirely enclosed by a fence with other lands; that the plaintiff, by his lessees and agents, kept a large number of cattle on the enclosed lands at all times until he was ousted of possession by defendant in 1910.

The evidence of the defendant disclosed that he lived about four miles south of the tract of land for some years prior to the time he obtained possession of it; that he passed in close proximity to the lands in going from his home to Tulsa; that he knew that plaintiff had had the lands enclosed, but did not know plaintiff had any claim on it; he personally knew plaintiff's foreman; when he went to look at the land prior to purchase he found the fence down on the ground in two or three places.

Plaintiff and his witness testified that the fence around the premises was kept in good repair and that there were a large number of cattle pasturing on the lands at all times, or being fed thereon. Plaintiff contended that defendant moved a small shack on the land, while defendant claims he built a small, inexpensive house on the land. The record discloses that shortly after the defendant placed the house on the land in question, upon an ex parte hearing, he obtained a restraining order against Stonebraker and his agent, restraining them from permitting cattle to go upon the land, which action was later dismissed by plaintiff before any issues were made thereon.

The record relating to recorded instruments, describing the land in question, shows that on December 31, 1903, the heirs of the deceased allottee executed to plaintiff a five-year agricultural lease upon the land. On March 1, 1905, Wiley Grayson, one of the heirs, executed an agricultural lease on the lands in question to S. R. Lewis and C. W. Eaton. On June 20, 1905, Wiley Grayson executed warranty deeds to the lands in favor of Charles W. Eaton and S. R. Lewis. On July 10, 1905, Chesley Starr and Wiley Grayson executed warranty deed to the southeast quarter (40 acres) of the land involved to the plaintiff. On April 28, 1906, Wiley Grayson executed deeds to plaintiff Stonebraker, describing 160 acres of land, not the same as that involved in this action, but it was recited in deed that it was the Katie Starr allotment, and it was testified by the witness Lynch that the deed was intended to describe the lands involved, and that an error was made in the description of the land, and that later deeds were executed to correct the former. On May 10, 1906, Wiley Grayson executed deeds in favor of plaintiff, Stonebraker, describing the lands involved in this action.

On December 28, 1908, Wiley Grayson executed a deed to the lands in question to one Ethel Davis, which deed was approved by the county court of Tulsa county. On January 2, 1909, Chesley Starr likewise executed a deed to Ethel Davis, which deed was approved by the county court. Ethel Davis executed a deed to one Turman, and Turman to Randolph, and on August 25, 1909, Randolph deeded the land to the defendant, I. R. McCormick. On June 9, 1913, defendant, McCormick, obtained quitclaim deeds from S. R. Lewis and C. W. Eaton to the land in question.

It is urged under plaintiff in error's fourth assignment that there is no evidence in the record that Stonebraker made any contract with either Amy Grayson or Wiley Grayson to purchase their interest in the land, or that he made any oral purchase of the land from them.

The plaintiff and the witness Lynch testified that plaintiff purchased the lands from the heirs, and paid each one-third of the purchase price. The receipt alone signed by Chesley Starr is not a sufficient memorandum to take the contract out of the statute of frauds, nor has it any weight as against the other heirs not signing the receipt, but it is of some value as against the interest of the signer. Whether the agreement and contract of sale was made with all of the heirs at the same time and date, it is not clear from the evidence. While the evidence is not of that character much desired in order to arrive at a proper determination of an issue of this character, nevertheless, we think there is sufficient to show that plaintiff made some agreement with the heirs of the allottee, and did

purchase the land and pay them the consideration therefor; that there is sufficient evidence to sustain the finding of the court upon that question.

Under the same assignment it is urged that the contract for the purchase of land was contrary to the statute of frauds under the laws of the state of Arkansas, which were in effect in the Indian Territory at the time of the transaction.

It is further urged that under the record shown, there was not such a performance under the oral contract as to take the case out of the statute of frauds. In support of such contention, certain cases from Arkansas involving specific performance are cited, wherein it is said:

"But possession, to have this effect (take the sale out of the statute of frauds) must be exclusive, evincing the birth of a new estate as distinguished from the continuation of an old one. * * *" Haines v. McGlome, 44 Ark. 79.

Also, certain Oklahoma decisions, holding that possession under oral contract to purchase must have been taken under the oral contract of sale, it being contended by defendant that the plaintiff in this case went into possession under the lease, and not under oral contract to purchase the land, and for that reason the oral agreement was not taken out of the statute of frauds. However, in the case of Rugan v. Vaughn (Ark.) 218 S. W. 205, the plaintiff, Vaughn, had been a tenant of the owner of the land, and while such tenant he made an oral contract to purchase the land, and while he was in possession the record owner conveyed title to another, and Vaughn brought suit for specific performance, and the court decreed specific performance, holding the payment of a part of the purchase price and the making of permanent improvements a sufficient ground for specific performance of oral contract for purchase of land. In the case of Shaffer v. Turner, 43 Okla. 744, 144 Pac. 366, it was said:

"Even if defendant had received no conveyance of any kind, he, having gone into possession, claiming title, and having paid the purchase price, his grantor had no title which she could convey to plaintiff as against defendant; and notwithstanding the fact of the lease contract on record which had not expired, plaintiff would be required, as a matter of law, to take notice by reason of defendant's possession of whatever right or interest defendant claimed in and to the land."

See, also, Wilkinson v. Stone, 82 Okla. 296, 200 Pac. 196; Fulkerson v. Mara, 68 Okla. 272, 173 Pac. 811; Duncan v. Kelly, 103 Okla. 74, 229 Pac. 425.

Even if plaintiff went into possession under the lease, still, we think, under the evidence, sufficient facts were shown, such as the execution of deeds, payment and acceptance of purchase price, to take the contract out of the statute of frauds. The action is not one for specific performance, nor does plaintiff rely upon an executory contract.

It is further urged that the contract of purchase was abandoned, that the plaintiff was a tenant of the owner of the land because of the agricultural lease given in 1903 in favor of plaintiff, and that the defendant cannot deny the ownership of the lessor. The testimony was that plaintiff paid the full purchase price agreed upon, and the record discloses that deeds, although not all valid because of restrictions, were executed by the owners to the plaintiff to all the land with the exception of the interest of Chesley Starr in and to 120 acres of the tract. No explanation is proffered why the agricultural lease was taken, but we think the taking of the lease, in view of the later acts of the parties, could not be said to be a clear abandonment of the oral agreement.

"Whether a contract is abandoned is a question of fact to be determined by the court or jury from all the facts and circumstances of the particular case." Martin v. Spaulding, 40 Okla. 191, 137 Pac. 882.

The fact that plaintiff at one time held a lease on the land does not preclude him from setting up his title thereto at this time, even though it be conceded he was a tenant at one time.

"As a general rule a tenant cannot dispute the title of his landlord, nor set up a paramount title in himself or others, but he may show that the landlord's title has expired by limitation or by operation of law subsequent to the beginning of his tenancy." Welch v. Johnson, 27 Okla. 518, 112 Pac. 989. See, also, Shaffer v. Turner, 43 Okla. 744, 144 Pac. 366.

Plaintiff in error, defendant below, says the finding of the court that he took possession of the lands under an order of the court secured upon an ex parte hearing is not supported by the evidence. The evidence, we think, shows that the defendant first went upon the land, and placed a house thereon, before he obtained the restraining order, but we think it further shows that prior to obtaining the restraining order, the plaintiff had not been entirely ousted from

possession; that he was still using the land for grazing purposes, and had not been entirely excluded therefrom until the ex parte restraining order against him was obtained.

It is further urged that Stonebraker's possession was not notice; that since he had placed of record the agricultural lease, other purchasers had a right to rely upon such lease as being the basis of plaintiff's possession. At the time the defendant in this action acquired his deed, the land was located within the state of Oklahoma, and we do not think the decisions cited from the state of Arkansas applicable. This court in the cases of Shaffer v. Turner, 43 Okla. 744, 144 Pac. 366, supra, and Wilkinson v. Stone, 82 Okla. 296, 200 Pac. 196, supra, has held that a purchaser must take notice of all the rights and claims of ownership of the person in possession of land, and cannot rely upon a recorded lease.

There were certain valid deeds on record to Stonebraker, also to Lewis and Eaton, which were sufficient to put the defendant upon inquiry, which would have led him to the claim of ownership of plaintiff. Under all the facts and circumstances shown in this cause, we cannot say, as urged by defendant, that the plaintiff was only a cotenant at the most. See case of International Land Co. v. Smith, 103 Okla. 101, 229 Pac. 601, and cases there cited, for discussion of this question.

Plaintiff in error, under his 11th assignment of error, contends that the court erred in admitting evidence as to the conditions of an alleged deed made by S. R. Lewis to defendant in error, because no proper showing was made that it could not be produced. The plaintiff testified, in substance, that after he purchased the land from the heirs of the allottee, he learned that Eaton and Lewis had some claim or title to the land, and that he purchased all their rights and interest in the land; that it was his recollection that S. R. Lewis executed to him a deed; that he did not know where the deed was at the time of trial. Attorney for the plaintiff testified that he had had in his file the Lewis deed referred to; thought he had introduced it in a prior trial, but was unable to find it at the time of trial. While the evidence did not disclose extended effort to find the deed or account for its loss, nevertheless, the parties who would most likely have possession of the deed testified, in effect, that they could not find it, but that it was lost at the time of trial. S. R. Lewis, who was supposed to have executed the deed, testified that he and C. W. Eaton were partners in their interest

in the land in question; that he remembered Mr. Stonebraker purchasing their, Eaton's and Lewis,' interest in an agricultural lease on the land; that it was his impression that the plaintiff paid him $100; stated that he did not remember whether they agreed to or did give a quitclaim deed to Stonebraker or not. He was asked if at the time he had the transaction with plaintiff, he intended to convey all the interest of Lewis and Eaton in the land, to which he replied: "We may have, I did not think we had a valid title to the land, except possibly the homestead allotment." Witness stated that he told defendant he claimed no title to the land.

The court found upon the question of the Lewis deed as follows:

"The evidence is very uncertain as to whether the plaintiff ever got a deed from S. R. Lewis as claimed at the trial, but the court is inclined to believe he did."

We find no prejudicial or reversible error in the admission of the testimony respecting the Lewis deed.

Plaintiff in error says the court erred in concluding, as a matter of law, that the conveyance to him, the defendant, was champertous and void, and calls attention to the case of Smith v. Braley, 76 Okla. 220, 184 Pac. 586, and others holding that the statute did not apply to deeds executed by Indians on their restricted lands. It has been held in the cases of Sanders v. LeForce, 93 Okla. 128, 219 Pac. 925, and International Land Co. v. Smith, 103 Okla. 101, 229 Pac. 601, that the exception of Indian allottees and their heirs under the provisions of section 1679, C. O. S. (section 2260, R. L. 1910), did not extend to persons other than the allottees, or the heirs of such allottees. As was said in those cases, the grantor, Randolph, in the deed to defendant here, was not an allottee or an heir.

We have examined the entire record in this case, and find the evidence weak upon some points, but not entirely lacking, and taking the record as a whole we think the evidence reasonably supports the judgment.

The judgment of the trial court is therefore affirmed.

BENNETT, TEEHEE, FOSTER, and REID, Commissioners, concur.

By the Court: It is so ordered.