TOWN OF GANS, a Municipal Corporation, State of Oklahoma, Plaintiff in Error,

v.

COOKSON HILLS ELECTRIC COOPERA-TIVE, Inc., a Corporation, and Jeff Mont-gomery, Manager of Cookson Hills Elec-tric Cooperative, Inc., Defendants in Er-ror.

No. 36764.

Supreme Court of Oklahoma.

Oct. 11, 1955.

Roy Frye, and Roy Frye, Jr., Sallisaw, for plaintiff in error.

Jack L. Rorschach, Vinita, J. Fred Green, Sallisaw, and J. F. Hudson, Stigler, for defendants in error.

BLACKBIRD, Justice.

This action was commenced in the district court by plaintiff in error, as plaintiff, against the defendants in error, as defendants, to require the latter to remove from the area within the incorporated Town of Gans, in Sequoyah County, Oklahoma, all of the poles, lines, wires, appliances and other property used by the defendant electric cooperative, in providing said town and its inhabitants with electricity and for a permanent injunction preventing said defendants from selling or delivering electricity or conducting any other business therein without first obtaining a franchise from said town.

As the parties appear here in the same order they appeared in the trial court, our continued reference to them will be by their trial court designations. As the electric cooperative's manager bears no significant or noteworthy relation to the issues involved in this appeal, it will be discussed as if the cooperative was the only party defendant.

According to the parties' stipulation of facts, the Town of Gans was originally incorporated with a population of 259 in the year 1902, at which time its streets and alleys were dedicated for street and alley purposes. From that date, to and including the date of the trial, its population has never been greater, nor has its plat of streets and alleys been different.` In 1933, the town became unincorporated and remained in that status until September 22, 1953, when it was re-incorporated. During the interim, or in 1946, while the town was unincorporated, the defendant started furnishing it and its inhabitants electricity as it now does, but it has never, since said town's re-incorporation, received from it a franchise to use its streets and alleys and public places for its transmission lines. This principal fact formed the basis of this action against it by plaintiff.

In its petition, plaintiff alleged, among other things, that defendant has "no legal right to use" its public places for the purposes above indicated and repeatedly alleged that defendant was thus using them and the town's streets and alleys "without a proper license * * *". Among other defenses, defendant pleaded, and at the trial without a jury, introduced evidence tending to show, in substance, that in 1946, the Board of County Commissioners of Sequoyah County who it alleged had the prerogative at that time (during the period the town was unincorporated) to do so, gave it "the right, privilege and franchise to erect, maintain, own, operate and conduct a system of transmission and distribution lines of electrical energy to all

eligible citizens and inhabitants of Sequoyah County, Oklahoma." Such proof was made by introducing an unsigned and incompletely dated document, identified by the witness, W. L. Brockman, an official of the defendant corporation in 1946, as a copy of a resolution passed by the aforesaid Board of County Commissioners and signed by its members in his presence on its regular meeting date, the first Monday of March, 1946. During this witness' testimony the trial judge indicated that in his opinion such resolution of the Board of County Commissioners was sufficient to authorize the defendant to use the aforesaid public ways in the Town of Gans in said county for the purposes here involved. And, in the absence of any evidence disputing the passage of said resolution, the Court, at the close of the evidence, entered a judgment in which he found that, by reason thereof, the defendant's "lines, poles, wires, connections and other appliances * * * were legally in place * * *", notwithstanding the fact it had no valid "franchise" from plaintiff. The Court specifically concluded "as a matter of law" that defendant is now and prior to September 22, 1953, "was legally using" for the aforedescribed uses in its business certain streets and alleys within the present incorporated plaintiff town, and that said town's subsequent incorporation "could not and would not deprive * * * Defendant of * * * (its) existing right" to such use. Accordingly, the injunction granted plaintiff was limited to the building of additional lines; defendant's declared right to maintain and operate its facilities as they were prior to the town's re-incorporation on the above date, being by said judgment specifically upheld. From said judgment, plaintiff perfected the present appeal.

Under the First Proposition of its brief, plaintiff contends that the trial court erred in admitting in evidence the above-described copy of the Resolution which, according to defendant's evidence, was passed by Sequoyah County's Board of County Commissioners in March, 1946. Its argument is directed both at the sufficiency of such evidence and the manner of its introduction. As to the latter, it is

asserted, in substance, that no proper predicate was laid for the introduction of such an unsigned, undated and unauthenticated carbon copy and that the introduction of such a paper was in violation of the "best evidence" rule which would have required, in the absence of the original resolution, the introduction of "the records or minutes" of the County Commissioners' meeting at which the resolution was represented as having been passed. Defendant's answer to this argument is that as a predicate for the introduction of such "secondary evidence" it made a sufficient showing, agreed to by counsel for defendant, that the "primary" or original record of said resolution could not be found, and thus complied with the rule governing such matters, citing McCormick v. Stonebraker, 133 Okl. 34, 270 P. 1098, and Bean v. Harris, 93 Okl. 10, 219 P. 300. In support of its position, defendant also cites the record of the trial proceedings. The following excerpt therefrom shows all that transpired at the trial with reference to the evidence under discussion:

"Mr. Green. We desire to introduce this resolution of the Board of County Commissioners of Sequoyah County, Oklahoma in evidence as the Defendants' Exhibit 2. If they don't agree that was a resolution passed by the Board then we will have to introduce proof on it.

"Mr. Frye: We don't agree to this. We object to this exhibit as incompetent, irrelevant and immaterial. * * *"

(Soon afterward the following occurred, during the examination of the witness, W. L. Brockman, by defendant's attorney, Mr. Green):

"Q. Would you tell the court just what happened that time in connection with the approval or adoption of that resolution by the Board of County Commissioners?

"Mr. Frye: To which we object as incompetent, irrelevant and immaterial and the proper way to prove such a resolution by the Board of County Commissioners and also the best evidence would be the records of the

Board of County Commissioners and not by this witness.

"Mr. Green: We agree with counsel that is ordinarily true but we have searched the records of that office and the same cannot be found.

"The Court: Do you agree, Mr. Frye, that the original record can't be found?

"Mr. Frye: Yes, sir.

"The Court: All right, overruled then.

"Q. (Mr. Green) Go ahead. * * *"

(At the end of the witness' cross examination, the following transpired):

"Mr. Green: We offer this in evidence now as Defendant's Exhibit 2.

"Mr. Frye: We object to it as not being dated or signed and it is not a certified copy and it is not an official record of the Board of County Commissioners of Sequoyah County, Oklahoma and the evidence is insufficient to establish it as a valid record.

"The Court: The witness says it was approved and signed by all three members of the board and you have agreed that the original record can't be found; overruled.

"Mr. Frye: Exception."

As will be noted from the quoted colloquy between the attorneys and the trial judge, it does not unequivocally appear what they meant by their use of the term: "original record"; and whether they thereby referred to the book in which Tit. 19, O.S. 1951 § 244 provides it shall be the duty of the county clerk to record "all proceedings" of the Board of County Commissioners, or whether they referred to the original paper or typewritten document, of which Exhibit 2 was undoubtedly, as far as there is a showing of evidence to the contrary, an unsigned and unattested copy. If the former, then we have little doubt that such record book might be considered the more reliable and therefore best evidence of the passage of such a resolution, but it is doubtful, in the absence of any evidence to the contrary, that a minute or entry in such a book would be extensive or long enough to reflect the details or all material parts of the resolution. If counsel and the Court referred, by their use of the term "original record", merely to the typwritten transcription or embodiment of the Resolution itself, and the original thereof had been lost and there existed no more authentic portrayal of the material parts of the resolution, then we know of no rule of evidence, and the parties' briefs, together with our independent research, have revealed none, preventing the use of the questioned exhibit as evidence. If the representations of the attorneys can correctly be construed as meaning that the "original record", both in book or journal and sheet paper form, has been lost and that Defendants' Exhibit 2 was the only documentary evidence in existence on the subject, there can be no question as to its admissibility when properly identified; and, as to Mr. Brockman's competency to identify the exhibit, no impediment is shown. If the Board of County Commissioners in fact passed the resolution but failed to make or retain any record of it (as quite conceivably has often been the case in some counties and occasionally in others), this absence of a record should not render the resolution impossible to prove. If that was the only possible way to prove it, reliable parole evidence should be admissible for that purpose. The so-called "best evidence" rule was not evolved to suppress the truth. Its purpose is to require the use of the most reliable evidence in existence to establish it. Early in its existence, this Court aligned itself with others that allow omissions in the records of the proceedings of such local legislative and/or administrative bodies, as the one involved here, to be supplied by parole evidence, where applicable statutes do not make such records the only evidence of such proceedings nor render invalid their unrecorded proceedings. See Gilmer v. School Dist. No. 26, Noble County, 41 Okl. 12, 136 P. 1086, and the Annotations to that case at 50 L.R.A.,N.S., 99, 106; 20 Am.Jur., "Evidence", sec. 1170, Notes 13 and 14. In view of this and the fact that Mr. Brockman's testimony, in itself, comprised a rather com-

plete story of the resolution, its purpose, its passage and the facts and circumstances in connection therewith, and, instead of being contradictory of anything shown by the copy complained of, was in complete agreement therewith and supplementary and explanatory thereof, the copy being cumulative in some respects, the alleged error in its admission loses much of its importance. Under all of the circumstances shown in the record, we cannot say that the trial court, by admitting it, exceeded his proper prerogative or abused his legal discretion in such matters. In this connection, see Tobin v. O'Brieter, 16 Okl. 500, 85 P. 1121; 3 Am.Jur., "Appeal and Error", sec. 965; 32 C.J.S., Evidence, § 779, and Priddy-Maer Elevator Co. v. Wenzel, 120 Kan. 423, 243 P. 1016, 1018, quoted under Note 46 thereto as follows:

> " 'The best evidence by which a fact may be proven should be used. But it is of importance that the truth be developed in the simplest manner, without regard to impractical technicalities. While rules of evidence should be followed, they are not themselves the end to be attained. They are only the means to the end.' "

██ In the Second, Third and Fourth Propositions of its brief plaintiff's counsel argue that the above-described resolution of the Board of County Commissioners, if such resolution was in fact passed, is void as in violation of Tit. 69, O.S.1951 § 4 and Art. II, sec. 32 of the Oklahoma Constitution. On the basis of such alleged invalidity, they say that since it was a nullity and wholly ineffective to grant defendant a franchise in the Town of Gans, the trial court's judgment allowing said Cooperative's continued operation there, even though restricted to the use of facilities in place when the town was reincorporated, was error. We do not agree. All such argument assumes that before defendant could be held, as in the appealed judgment, to have such facilities "legally in place" there, or to be "legally using" the town's "streets, alleys and public places" on which its facilities were located, it was necessary for it to have a franchise. As hereinbefore pointed out, at the time defendant commenced

distributing electricity in Gans, it was unincorporated. That being true, there was nothing, as far as plaintiff points out and we have been able to ascertain, to prevent the Board of County Commissioners of the county from giving defendant the right to use, for such purposes, the public roads of said county, including those traversing that portion of the county in which Gans is located. The word "franchise" is nowhere used in Tit. 69, sec. 4, supra. Said statute provides specifically only for "consent" from the Board of County Commissioners. It provides for no right or franchise to be held either perpetually or for a term of years, but says that whenever the corporation, to which such "consent" has been given, fails to construct or maintain its "poles, wires, conduits or equipment * * * in complete accord with the rules and regulations prescribed by the Board * * *" it "shall ipso facto forfeit" its right. Here, there was no showing nor intimation that defendant has not always constructed and maintained its above-specified facilities in compliance with any and all rules and regulations that may have been prescribed by the Board; nor is there any indication of any basis for a forfeiture or cancellation of the license or permission originally given it by said Board to do the things plaintiff now complains of. In this situation, we can only conclude that the action of the Board (assuming without determining said Board's lack of authority to grant defendant a "franchise" by the resolution introduced in evidence) was sufficient to grant it at least permissive license to use Gans' streets and alleys as it was doing prior to said town's re-incorporation on September 22, 1953. In this connection, see Boise City Artesian Hot & Cold Water Co. v. Boise City, 9 Cir., 123 F. 232. And plaintiff has not demonstrated, by the citation of statute or applicable authority of any character, that its re-incorporation, standing alone, constituted a revocation of such license. It therefore follows that defendant's use of such public places as it was doing prior to said re-incorporation has not, by virtue of that occurrence alone, become illegal. It also follows that the trial court's judgment holding that defend-

ant was then "legally" using such public ways and refusing to enjoin their continued use as then existing, was not error. Said judgment is therefore affirmed.

WILLIAMS, V. C. J., and WELCH, CORN, HALLEY and JACKSON, JJ., concur.