## WARNER v. WICKIZER et al

No. 19910. Opinion Filed Sept. 16, 1930.

Rehearing Denied Dec. 23, 1930.

William Neff, for plaintiff in error.

Davidson & Williams, for defendants in error.

LEACH, C. This action was commenced in the district court of Tulsa county, on March 7, 1914, by E. S. Warner against Margaret C. Wickizer et al., to obtain possession of 160 acres of land and to recover rents thereon.

It was alleged by plaintiff that he was the fee owner of the land, and that the defendants denied his rights therein and unlawfully withhold possession thereof under claim of absolute ownership.

The land involved was the allotment of Tecumseh Tiger, a full-blood Creek Indian, who died during the year 1900, patent to the land being subsequently issued to his heirs.

This is the third appeal in this case. At the first trial of the cause, a demurrer was sustained to plaintiff's evidence on the ground that neither plaintiff nor his grantor had been in possession of the land, or taken or received the rents or profits therefrom, for a period of one year prior to the execution of the deed relied on. It was held in Warner v. Wickizer, 61 Okla. 200, 160 Pac. 885, that the statute relied on by the defendants was not applicable under the facts shown, and the judgment of the trial court sustaining defendant's demurrer was reversed.

The second trial resulted in a judgment in favor of the plaintiff decreeing him to be the owner of all title to the land, and defendants appealed, and that judgment was reversed in Wickizer v. Warner, 102 Okla. 214, 228 Pac. 781, with directions to grant a new trial, it being there held that Albert Tiger, nephew of the deceased allottee through whom the plaintiff claimed entire title to the land, only inherited an undivided one-half interest in the land, and that plaintiff had not shown that the defendants denied plaintiff's rights in the land. It is the title and right of possession to the one-half interest inherited by the nephew, Albert Tiger, that is here and now involved.

The third trial resulted in a judgment in favor of the defendants, and the plaintiff brings this appeal.

The several assignments of error and grounds for reversal relied on by the plaintiff are, in substance, that the judgment appealed from is not sustained by the evidence and is contrary to the law and evidence. The trial court after making certain findings of fact made and entered, with others, the following conclusions of law:

"A. The court finds that as a matter of law and as a matter of fact, the plaintiff, E. S. Warner, has been guilty of laches.

"B. The court finds as a matter of fact and as a matter of law that plaintiff is estopped from asserting any claim to this property or maintaining this action.

"C. The court finds as a matter of law that the Arkansas statute of seven years governs in this case and that the plaintiff is barred by the statute of limitation.

"D. The court further adjudges that the alleged purchase of the land in controversy by the Iowa Land & Trust Company from Albert Tiger was a mortgage; that same is stale and unenforceable."

The first two propositions presented and argued in the brief of plaintiff relate to the first two conclusions of law "A and

B," it being asserted by the plaintiff that "Laches is not a defense to this action," and that none of the legal elements of estoppel are shown to exist. From the record and authorities presented, we are inclined to the opinion that the contention made by plaintiff is meritorious, but we do not find it necessary to pass upon and determine the same or the correctness of the first two conclusions of law as presented in plaintiff's brief, because they are not necessarily controlling or decisive of the case under our holding upon other conclusions of law which are decisive on the issues.

The third conclusion of law by the trial court was, in substance and to the effect, that the plaintiff's claim of title and right of action was barred by the Arkansas seven-year statute of limitation, which was pleaded as a defense by the defendants. If the plaintiff's right of action accrued prior to statehood, then the Arkansas statute of limitation would be applicable.

"The statutes of limitation, as they appear in Mansfield's Digest of the Statutes of Arkansas, control the commencement of all actions, real or personal, where the cause of action accrued prior to November 16, 1907, in that part of the state formerly comprising the Indian Territory." Julia O. & G. Co. v. Cobb, 128 Okla. 260, 262 Pac. 650.

See, also, Harris v. Grayson, 129 Okla. 281, 264 Pac. 623.

The record discloses that Albert Tiger, a nephew and one of the heirs of the deceased allottee, executed a deed purporting to convey full title to the land involved to the Iowa Land & Trust Company under date of December 27, 1904, which deed was recorded on the next succeeding day. On February 9, 1905, the same grantor, Albert Tiger, executed a second warranty deed to the same land in favor of A. A. Viersen and Geo. C. Beidleman, which later deed was recorded two days after its execution. During the years 1907 and 1908, Viersen and Beidleman obtained a deed to the land involved from the heirs of Judy Tiger, the deceased wife of the allottee, who inherited a one-half interest in the land, and also acquired other deeds from Albert Tiger and those to whom he had executed deeds other than to the grantor of plaintiff.

In 1908, Viersen and Beidleman sold and conveyed their rights and interest in the land to T. C. Wickizer, one of the defendants, and in 1910, he sold and conveyed 80 acres of the land to the defendant Farris, who thereafter occupied and improved the same. In 1911, the Iowa Land & Trust Company, a domestic corporation, organized under the laws of the Indian Territory with offices at Muskogee, executed a deed to the land to the plaintiff, Warner, who was an officer of the corporation and owned all of its shares of stock except two or three.

Prior to the execution of any of the deeds referred to, Albert Tiger, representing himself as the sole heir of the deceased, executed a written five-year agricultural lease on the land involved to one Stonebreaker, which lease was recorded in 1904, and, under its terms, the lessee was to place in cultivation a portion of the land, fence the same, and make other improvements. The rent, except for the year 1904, which was paid in advance, was payable in cash the 1st day of January, 1905, and the first day of each subsequent year thereafter during the term of the lease. It is the contention of the plaintiff that his grantor, Iowa Land & Trust Company, as well as the defendants or their grantors, had no right to the possession of the land, or right to maintain any action for possession thereof until the expiration of the said lease on September 16, 1908, and for that reason the statutes of limitation would not have begun to run until that date, and that the statute of limitations relied upon did not apply. Certain authorities are cited by the plaintiff which hold that the statute of limitation does not begin to run until the party against whom it is directed is entitled to possession, as in the case of a remainderman. No fault is found with the rule announced, but we do not consider such authorities applicable to the facts in the instant case. Buckner v. Warren, 41 Ark. 532, and Williams v. Shaver, 100 Ark. 565 140 S. W. 740, are also cited by plaintiff in support of the contention above stated. While the Arkansas court did hold in such cases that the nonpayment of rent was insufficient to warrant forfeiture of a lease unless it so expressly provided, yet it further stated in the first case:

"* * * But if he (lessee) expressly repudiate the obligations of the lease and by words and equivalent acts declare that he will not perform them, the landlord may treat the lease as rescinded and regain possession by unlawful detainer."

So the case does not hold that, in the event a lessee refuse to recognize the lawful owner of land as his landlord and denies him rent and pays same to another, then, under such circumstances, the true and lawful owner could not regain possession of the land. On the contrary, it is indicated that the true owner would be entitled to possession.

The lessee, Stonebreaker, apparently recognized Beidleman and Viersen as owners

of the land by payment to them of the 1907 and 1908 rents. After the expiration of the Stonebreaker lease, Surtlief, who was a sublessee of Stonebreaker, continued to occupy the land for a period and paid rent thereon to the defendants. No demand, so far as the record discloses, was ever made of the lessee by the Iowa Land & Trust Company, or plaintiff, for payment of rent on the land or possession, nor did they make any assertion of ownership to the land until the filing of this action, or shortly prior thereto except the recording of their deed in 1904. The witness, Beidleman, testified, in substance, that soon after he and Viersen purchased the land from Tiger in 1905, they made a trip to look at it, made three or four trips up to look at it; that at one time they, with their wives, spent some little time on the land; that he wrote the lessee, Stonebreaker, about the rents, and Stonebreaker claimed he had paid the 1905-06 rents in advance to Tiger; that, in January, 1907, Stonebreaker sent him a check for the 1907 rents; he also sent check for 1908 rents; that the land was fenced and 80 acres were in cultivation by the sublessee, Surtlief.

The plaintiff specifically alleged in his amended petition that the defendants. were in possession of the land involved, claiming to be the owners thereof,

"* * *and that said defendants have so unlawfully withheld possession of said lands from the plaintiff since on or about the— day of— 1907, and during that time have collected, retained and used for their own benefit all of the rents and profits arising from said real estate."

Beginning with 1908, all taxes levied and assessed against the land were paid by the defendants or their grantors, Viersen and Beidleman, except certain taxes levied after the suit was commenced which were paid by the plaintiff.

"A possession, to be adverse, must be open, visible, continuous, and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants." Flesher v. Callahan, 32 Okla. 283, 122 Pac. 489.

"In determining whether particular acts of ownership indicate an adverse possession, the usual and ordinary use of similar lands by their owners should be taken into consideration. No precise rule of application can be laid down. Any acts, or series of acts, which show the open, notorious, exclusive, and hostile possession of one who claims to be the owner of the land may be proven as evidence of adverse possession.

Thus such possession may be evidenced by receiving the rents, issues, and profits of the property, or by conveying, devising, leasing, incumbering, improving. * * * But, irrespective of the character of ownership asserted, acts of dominion over the land must, to be effective as against the true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that his lands are in the adverse possession of another." I R. C. L. 697.

"The notice or knowledge required must be either actual or act or acts relied on as an ouster must be of such an open and notorious character as to be notice of themselves, or reasonably sufficient to put the disseized cotenant on inquiry, which, if diligently pursued, will lead to notice or knowledge of the fact." Beaver v. Wilson, 117 Okla. 68, 245 Pac. 34.

For other cases, with authorities therein cited, applicable to the present action, see: International Land Co. v. Smith, 103 Okla. 101, 229 Pac. 601; Connor v. Thornburgh, 140 Okla. 16, 282 Pac. 122; Hurie v. Quigg, 121 Okla. 80, 247 Pac. 677; Caldwell v. Scivally, 118 Okla. 1, 246 Pac. 879; Stolfa v. Gaines, 140 Okla. 292, 283 Pac. 563.

The recording of the deed from Albert Tiger to Viersen and Beidleman in the year 1905, also the several other deeds in conflict with the plaintiff's; collection of all rents on the property beginning with the year 1907; payment of taxes, together with other circumstances shown, all tend to establish an unequivocal claim of ownership, adverse and exclusive possession in defendants and their grantors of the land involved, and as we view it, were sufficient to meet the established rules applicable in such cases and to put the plaintiff on notice of defendants' claim of absolute ownership.

"Where the statute of limitations is pleaded as an affirmative defense, the burden of proving it is on the one who asserts it, and where the evidence is conflicting as to whether or not the statute of limitations has run, the finding and verdict of the jury thereon will not be disturbed on appeal, if there is any evidence reasonably tending to support such verdict and finding." Hall v. Smith, 126 Okla. 206, 259 Pac. 537.

See, also, Webber v. First Nat. Bank in Bartlesville, 127 Okla. 277, 260 Pac. 741; Thompson v. Smith, 102 Okla. 150, 227 Pac. 77; Connor v. Thornburgh, supra; McCormick v. Stonebreaker, 133 Okla. 34, 270 Pac. 1098.

Applying the above rule to the record in the instant case, we are of the opinion that the evidence reasonably supports the finding and conclusion of law by the trial court that the plaintiff's right of action

was barred by the Arkansas seven-year statute of limitation.

The fourth proposition presented and argued in the brief of plaintiff in error relates to the fourth conclusion of law as made by the trial court, wherein the court found and held the deed from Albert Tiger to the Iowa Land & Trust Company, on which the plaintiff relied to establish his title, was a mortgage to secure the payment of the sum of $25, and that the same was stale and unenforceable.

The plaintiff contends that such finding and conclusion of law was erroneous and unwarranted under the evidence. The defendants alleged in their answer that the land company took its deed as a mortgage, and in their answer made tender to the plaintiff of the sum of $25, with interest thereon from the date, December 27, 1904, and prayed that such deed be canceled and their title be quieted. There was competent evidence tending to establish that the Iowa Land & Trust Company's deed was executed as a mortgage, and we are unable to say that the trial court's finding thereon was against the clear weight of the evidence.

In view of the fact that the defendants asked affirmative equitable relief in the cancellation of the deed, it was the duty of the trial court, as we view it, to require the defendants to pay the amount of such mortgage under the equitable rule that "He who seeks equity must do equity." See the authorities and application of the rule as announced in the cases of Whitehead v. Stevens, 54 Okla. 337, 152 Pac. 445; Nellis v. Minton, 91 Okla. 75, 216 Pac. 147, and First Nat. Bank of Ada v. Elam, 126 Okla. 93, 258 Pac. 892, wherein parties sought relief somewhat similar to that asked by defendants in the present action.

The judgment of the trial court is modified to the extent that the defendants are required, as a condition to having their title quieted, as against the mortgage of the plaintiff, to pay to the plaintiff the sum of $25, with interest thereon at 6 per cent. from December 27, 1904, which sum is adjudged a lien against the land involved.

Finding no reversible error in the record, the judgment of the trial court is otherwise approved, and the judgment as so modified is hereby affirmed.

BENNETT, TEEHEE, REID, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.