PRESTON et al. v. PRESTON.

No. 33299.   March 29, 1949.

Rehearing Denied June 28, 1949.

*207 P. 2d 313.*

Steele & Boatman, of Okmulgee, and Clem H. Stephenson, of Wewoka, for plaintiffs in error.

Phillips & Frerichs, Martin L. Frerichs, and Ross & Ross, all of Okemah, for defendant in error.

O'NEAL, J. This is an action commenced in the district court of Okfuskee county by Mamie M. Preston, hereinafter referred to as plaintiff, against Martha Lowe and others to quiet title to lots 1, 2, 3, 4 and 5, in block 4 in the town of Weleetka, Oklahoma. In her petition plaintiff alleges that she is the owner and in possession of the property above described and that she acquired title thereto by quitclaim deed from J. R. Preston November 28, 1941, and by quitclaim deed from Mary Jo Davis and W. H. Davis, her husband, dated June 8, 1946. Among the other defendants are Susan Preston, Banks Preston, and their unknown heirs, executors, administrators, devisees, trustees, and assigns. Lucille Preston was later made a party defendant.

J. C. (Jake) Cooley answered and claims to be the owner of an undivided one-sixth interest in said property. He alleges that he is an heir of Susan Preston, deceased, who at the time of her death owned an undivided one-half interest in and to said property. He prayed that his title be quieted and that the premises be partitioned.

Minnie Cooley and Harry G. Cooley answered and claim that they are the sole heirs of Pete Cooley, deceased, who was a son and heir of Susan Preston, deceased.

Lucille Preston answered, asserting that she is the divorced wife of Banks Preston who was a son of Susan Preston, and that Banks Preston inherited an undivided one-fourth interest in said property from his mother, Susan Preston, and that in a decree of divorce from Banks Preston filed August 7, 1946, the undivided one-fourth interest of Banks Preston in and to said property was awarded and decreed to her, Lucille Preston, as alimony.

Plaintiff by reply and amended reply to the answers and cross-petitions of defendants alleges, in substance, that any and all claims of each and all of said defendants are barred by the statute of limitations in that plaintiff and her grantor, J. R. Preston, had been in adverse possession of said premises for more than 15 years before this action was commenced and had acquired title to said premises as against all said defendants by prescription. She further alleges that during said time she and her grantor, J. R. Preston, had paid taxes and assessments and placed valuable and lasting improvements on said lands amounting in all to approximately $35,000, for which she claims credit as occupying claimant in the event the court should find and hold that said answering defendants or any of them are the owners of any interest whatever in said property. As to defendant Lucille Preston, she also pleaded a quitclaim deed from Banks Preston to Mary Jo Davis dated May 28, 1946, more than two months prior to the decree of divorce of Lucille Preston from Banks Preston, and a quitclaim deed from Mary Jo Davis and W. H. Davis, her husband, to plaintiff, Mamie Preston, dated June 8, 1946.

Defendant Lucille Preston responded thereto alleging, in substance, that

said quitclaim deed from Banks Preston to Mary Jo Davis was executed while her petition against Banks Preston was pending, in which she set out and specifically described the interest of Banks R. Preston in said property and prayed that it be set apart and awarded to her as alimony, and that therefore said quitclaim deed was ineffective to convey any interest in said premises to said Mary Jo Davis under the lis pendens statute.

The issues thus joined were tried to the court, resulting in a decree in favor of plaintiff, Mamie M. Preston, and quieting her title in and to said premises as against all of the defendants and those claiming under them, and defendants Lucille Preston, Jake C. Cooley, Harry G. Cooley and Minnie Cooley appeal by joint petition in error.

There are eight assignments of alleged error presented under three propositions. They are: (1) The judgment is contrary to the law and the evidence; (2) the court committed error in holding that these defendants were barred by the statute of limitations; and (3) the court erred in holding that the deed executed by Banks Preston to Mary Jo Davis conveyed the interest of Banks Preston in said premises.

The first and second propositions may well be considered together. The facts in this case as disclosed by the pleadings and evidence are out of the ordinary. There is but little conflict in the evidence going to the material issues. The evidence without substantial conflict discloses that the maiden name of Susan Preston, now deceased, was Susan Banks. She was married to Warren Cooley at Prestonsburg, Kentucky, on January 22, 1900. To that marriage were born two children, Pete Cooley, born in 1903, and Jake Cooley, born in 1907. Warren Cooley and Susan Cooley were divorced in 1909 Pete Cooley died in 1929, leaving as his heirs Minnie Cooley, his widow, and Harry G. Cooley, his son. Shortly after Warren Cooley and Susan Cooley were divorced, J. R. Preston, sometimes referred to in the record as Dr. J. R. Preston, and Susan Cooley, nee Banks, appear to have begun living together as man and wife at Weleetka, Oklahoma. There is no recorded evidence of their marriage, but they continued to live together as man and wife until the death of Susan. Of that relation one son, Banks R. Preston, was born. Banks Preston lived with his father and mother on the premises herein involved until the death of his mother, Susan Preston, which occurred October 21, 1918, and continued to live with his father on the premises until about April 7, 1940, at which time he was married to plaintiff in error, Lucille Preston. They lived with Dr. J. R. Preston for about twelve days at which time they separated. On May 13, 1940, Lucille Preston filed an action for separate maintenance against Banks R. Preston. That action was dismissed. Later, Lucille was granted a divorce from Banks R. Preston on a petition filed November 26, 1940. They were remarried on July 5, 1941. Of that marriage one child, Tanya Lou Preston, was born. They separated again October 1, 1944, and on April 9, 1946, Lucille filed an action for divorce from Banks R. Preston. Therein, after setting out statutory grounds for divorce, she alleged that the defendant therein, Banks R. Preston, was the owner of an undivided one-fourth interest in the lots herein involved, and that he was also the owner of an undivided one-half interest in lot 12, block 27, in the town of Weleetka. She prayed that she be granted a divorce and that she be awarded the said interest of the said Banks R. Preston in the above-described property as alimony. On August 3, 1946, Lucille was granted a divorce from Banks R. Preston and the care and custody of the minor child. The decree further provided:

"It is further ordered that plaintiff be and she is hereby awarded as alimony the following described premises, situated in Okfuskee County, Oklahoma, to-wit:

"An undivided one-fourth (¼) interest in Lots 1, 2, 3, 4 and 5 of Block 4 of the Incorporated Town of Weleetka, Oklahoma,

"and the defendant is ordered and directed to execute and deliver to the plaintiff a proper conveyance of said premises; upon failure of the defendant to execute said conveyance for a period of ten (10) days from this date it is ordered that this Journal Entry shall operate to convey said premises to the plaintiff."

.She appears to have settled her claim as to the interest in lot 12, block 27, and that property is not involved in this action. In the meantime, on May 28, 1946, Banks Preston executed and delivered a quitclaim deed conveying to Mary Jo Davis all his right, title, and interest in and to said lots 1, 2, 3, 4 and 5, in block 4, Park addition to the town of Weleetka, Oklahoma. Apparently that is the same property as described in the petition of the plaintiff herein. (Banks Preston and Banks R. Preston is one and the same person.) June 8, 1946, Mary Jo Davis and her husband, W. H. Davis, executed and delivered a quitclaim deed conveying all their right, title and interest in lots 1, 2, 3, 4 and 5, block 4, Weleetka, Oklahoma, to Mamie Preston, the plaintiff herein.

On February 7, 1918, J. M. Northrop and A. L. Northrop, as husband and wife, executed and delivered a warranty deed conveying lots 1, 2, 3, 4 and 5, in block 4 in the town of Weleetka, Oklahoma, to J. R. Preston and Susan Preston. The recited consideration therein was $1,250. Said deed was filed for record March 7, 1918. On the same day, March 7, 1918, there was filed for record a mortgage executed by J. R. Preston and Susan Preston, described as husband and wife, to the Home Building & Loan Association, of Weleetka, Oklahoma, covering the same lots, to secure a loan of $2,500. Therein it was recited that said mortgagors were the owners of (blank) shares of stock in said association. The monthly payments on said stock

and loan were $45.83. The assignment of the stock as additional security specified 25 shares. Susan Preston died October 21, 1918, a little more than seven months after the execution of the mortgage to the Building & Loan Association. She left as her heirs her two sons by the marriage to Warren Cooley and the one son born to her under the relation to J. R. Preston. It developed that Dr. J. R. Preston had been married to Lou Ella VanHoose before assuming the alleged marriage relation with Susan and had neglected to obtain a divorce from his first wife. November 26, 1921, about three years after the death of Susan, there was entered in the Circuit Court of Johnson county, Kentucky, a decree divorcing Lou Ella Preston from Jetharoe Preston. It was shown that Jetharoe Preston was the same person as Dr. J.' R. Preston. It thus appears that J. R. Preston was never legally married to Susan Preston, therefore, he was not an heir of Susan Preston.

There are now two houses and a double garage with an apartment above on the lots herein involved. The first house was built in 1918, apparently by J. R. Preston and Susan Preston. The other house was built in 1922. The garage apartment was built in 1922 or 1923 at a cost of about $1,150. After the death of Susan Preston, J. R. Preston continued to live in the house on these lots with his mother, his son, Banks Preston, and his sister until about January, 1923, at which time he was married to Mamie Preston, plaintiff herein. Mamie had been married before and had a daughter by the former husband. That daughter is the Mary Jo Davis named in two of the quitclaim deeds referred to above. After J. R. Preston and Mamie Preston were married they continued to occupy the premises and lived in one of the houses until about November 28, 1941. About that time J. R. Preston and Mamie Preston were divorced, and on said date J. R. Preston made, executed and delivered a quitclaim deed conveying all his right, title and interest in and to said lots

1, 2, 3, 4 and 5, block 4, Park addition to the town of Weleetka, Oklahoma, to Mamie Preston, plaintiff herein. The recited consideration in the deed was $1 and other valuable consideration. This was apparently a property settlement or a division of property growing out of their divorce proceedings. On August 7, 1942, Mamie Preston by quitclaim deed conveyed lots 4 and 5, in said block, to her daughter, Mary Jo Miles, who later married W. H. Davis, and, as above stated, Mary Jo Davis and W. H. Davis later, by quitclaim deed, conveyed said lots back to her mother, Mamie Preston.

There was no administration of the estate of Susan Preston and no judicial determination of her heirs, but under the record it conclusively appears that her heirs were three sons, Jake Cooley, Pete Cooley, now deceased, and Banks R. Preston. Therefore, if Susan Preston at the time of her death was the owner of an undivided one-half interest in the five lots herein involved, it descended to her three sons in equal shares, one-third of the one-half interest, or one-sixth interest, to each. Banks R. Preston never did become the owner of an undivided one-fourth interest in said lots. The most interest he could have acquired was an undivided one-sixth interest.

Unless J. R. Preston acquired title to the lots by prescription, the undivided one-half interest which Susan Preston owned at the time of her death is now owned: One-third of one-half, or one-sixth interest, by Jake Cooley; the one-sixth interest which descended to Pete Cooley is owned by his widow, Minnie Cooley, and his son, Harry G. Cooley, in equal shares; and the one-third of one-half, or one-sixth interest, which descended to Banks R. Preston is owned either by Lucille Preston under the decree setting it apart to her as alimony or by the plaintiff herein under the quitclaim deed from Banks Preston to Mary Jo Davis and the quitclaim deed from Mary Jo Davis and W. H. Davis to the plaintiff herein.

The trial court made no specific findings of fact or conclusions of law on this issue of title by prescription. Defendants contend that the general findings and decree in favor of Mamie Preston necessarily include findings of fact and conclusions of law to the effect that either J. R. Preston had acquired the whole title by prescription before he conveyed to Mamie Preston, or adverse possession by J. R. Preston, coupled with adverse possession by Mamie Preston from November 28, 1941, to June 10, 1946, was sufficient to perfect title by prescription.

There can be no doubt that the possession of Mamie Preston from November, 1941, to June, 1946, some four years and six months, was adverse. We must then look to the evidence as to the nature of possession by J. R. Preston.

The record shows that from the date of the death of Susan Preston, J. R. Preston remained in possession of the property until he conveyed same to Mamie Preston November 28, 1941, which was over 23 years. Apparently he and Susan paid the monthly installments on the $2,500 mortgage to the Building & Loan Association for the seven months until Susan's death. This, including interest, amounted to about $320. What part of that represented interest is not shown. J. R. Preston apparently paid the installments on that mortgage until July 15, 1924, at which time he paid the balance which then amounted to $2,225, and the mortgage was released as of that date. In 1922, he built another four-room house on the lots at a cost of about $2,500. In the spring of 1923, he remodeled the original house and added three rooms thereto at a cost of about $1,750. In the summer of 1923, after he had married Mamie, they built a double garage with a two-room apartment above it at a cost of about $1,150. This was apparently paid for by his then wife, Mamie Preston, though there is some conflict in the evidence on that point. May 10, 1922, J. R. Preston, described

as a widower, executed a mortgage to the Building & Loan Association covering lots 4 and 5, to secure a loan of $1,900. That mortgage was paid and released January 25, 1929.

April 17, 1940, J. R. Preston and Mamie Preston, his wife, mortgaged all of lots 4 and 5 to Volney Hamilton to secure a loan of $578.75. That loan was paid by Mamie Preston and the mortgage was released August 8, 1942. About 1924 paving was laid in front of the lots and assessments totaling about $2,-075 were levied against said lots. Seven of the installments of the assessment against each lot were paid, the first in 1924 and the seventh in 1930. The balance remains unpaid. The amount paid, including interest, was about $2,250. From 1918 to the date of the trial, J. R. Preston and Mamie Preston had paid all of the ad valorem taxes levied against said lots amounting to about $4,287. Of that amount, Mamie Preston paid $1,173.71. From 1918 to 1923, J. R. Preston was in possession of all of the premises, collected all the rents, etc. From 1923 to 1941, J. R. Preston and Mamie Preston were in possession and collected all of the rents, etc. From 1941, to the date of the trial, Mamie Preston was in possession of lots 1, 2, and 3, and collected all rents and profits therefrom, and Mamie Preston or Mary Jo, her daughter, was in possession of lots 4 and 5, and collected all of the rents, etc.

During all of that time no other person ever claimed or asserted any right, title or interest in said premises or claimed or demanded any of the rents or income therefrom until after this action was commenced.

Defendants contend that when J. R. Preston and Susan Preston acquired title to said lots, they became and were tenants in common, each owning an undivided one-half interest, and that on October 21, 1918, when Susan Preston died, her undivided one-half interest descended to her three sons, Jake Cooley, Pete Cooley, and Banks R. Preston, and that J. R. Preston then be-

came tenant in common with the said heirs of Susan Preston, and that his possession was not adverse to said heirs of Susan Preston. In this connection they cite Keeler v. McNeir, 184 Okla. 244, 86 P. 2d 1004, which states the general rule that:

" . . . the tenant in possession is deemed to be holding said possession for himself and for the tenant who is not in possession. The possession of the one is constructively possession for the other. Thus it is that the mere holding of possession, by one tenant, can never be considered adverse to his cotenant until there is some act or conduct on his part which must give the other cotenant notice that his title has been repudiated or is disputed by the one in possession; or there must be such conduct by the tenant in possession as reasonably would put the other tenant on inquiry . . . "

It was therein said:

"Such has been the rule in this state in a long line of cases."

In that case the court cites with approval Chouteau v. Chouteau, 49 Okla. 105, 152 P. 373, wherein it was held:

"The mere possession of a tenant in common, no matter how full and complete, does not operate as an ouster of his cotenant, or amount to adverse possession as against the claim of his cotenant. There must be something to show a denial or repudiation of his cotenant's rights, or the possession will be deemed to be held in subordination to the rights of the cotenant."

See, also, Baldridge v. Caulk, 110 Okla. 185, 237 P. 453.

Defendants also cite Beaver v. Wilson, 117 Okla. 68, 245 P. 34, and rely in part on that part of the opinion which holds:

"The statute of limitations does not begin to run in favor of one cotenant of land in possession, against another cotenant thereof, until actual ouster by the former, or some other act or acts on his part amounting to a total denial of the rights of the latter, and until no-

tice or knowledge of the act or acts relied on as an ouster is brought home to him."

And:

"The notice or knowledge required must be either actual or act or acts relied on as an ouster must be of such an open and notorious character as to be notice of themselves, or reasonably sufficient to put the disseized cotenant on inquiry, which, if diligently pursued, will lead to notice or knowledge of the fact."

It may be noted that in the latter case it was held that the acts of Joe Grayson, the tenant in common who there took possession of the land, and his grantees, amounted to an ouster of the other tenants in common who were out of possession. The acts specified as amounting to an ouster were: The execution of a five-year lease covering all of the land; a deed by Joe Grayson purporting to convey the whole interest; fencing the land; the collection of rents; other acts of absolute and unqualified possession for more than 20 years. It was held that these acts were ample as a predicate for a finding of ouster by the trial court. The decree of the trial court sustaining title by prescription was affirmed.

Plaintiff cites Warner v. Wickizer, 146 Okla. 232, 294 P. 130, which appears to be controlling in this case as to Jake Cooley and the heirs of Pete Cooley.

As to what acts of a tenant in possession constitute adverse possession, the court there cited and quoted with approval the general rule as stated in 1 R.C.L. 697, as follows:

" 'In determining whether particular acts of ownership indicate an adverse possession, the usual and ordinary use of similar lands by their owners should be taken into consideration. No precise rule of application can be laid down. Any acts, or series of acts, which show the open, notorious, exclusive, and hostile possession of one who claims to be the owner of the land may be proven as evidence of adverse possession. Thus such possession may be evidenced by

receiving the rents, issues, and profits of the property, or by conveying, devising, leasing, incumbering, improving . . . But, irrespective of the character of ownership asserted, acts of dominion over the land must, to be effective as against the true owner, be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that his lands are in the adverse possession of another.' "

This is in accord with the general rule applying to tenants stated in 1 Am. Jur. 825. As to what acts are sufficient to constitute adverse possession, this court in Warner v. Wickizer, supra, said:

"The recording of the deed from Albert Tiger to Vierson and Beidleman in the year 1905, also the several other deeds in conflict with the plaintiff's; collection of all rents on the property beginning with the year 1907; payment of taxes, together with other circumstances shown, all tend to establish an unequivocal claim of ownership, adverse and exclusive possession in defendants and their grantors of the land involved, and as we view it, were sufficient to meet the established rules applicable in such cases and to put the plaintiff on notice of defendants' claim of absolute ownership."

The acts of J. R. Preston and Mamie Preston indicating claim of ownership in this case are much stronger than those in Warner v. Wickizer, supra.

It cannot be said that the decree in so far as it affects the Cooleys is against the clear weight of the evidence or is contrary to law.

As to the claim of Lucille Preston, the facts are somewhat different. Lucille claims title through Banks R. Preston. Plaintiff, Mamie M. Preston, claims title to whatever interest Banks R. Preston had in the premises through a quitclaim deed from Banks R. Preston to Mary Jo Davis and a quitclaim deed from Mary Jo Davis to plaintiff.

Lucille contends that the deed from Banks R. Preston to Mary Jo Davis is ineffective to convey title under the

provisions of 12 O.S. 1941 §180, which provides:

"When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's title; but such notice shall be of no avail unless the summons be served or the first publication made within sixty days after the filing of the petition."

Lucille filed her second petition for divorce against Banks R. Preston April 9, 1946, wherein she set up the alleged interest of Banks R. Preston in said premises and prayed that it be awarded to her as alimony. The decree of divorce awarding that interest to Lucille as alimony was entered August 3, 1946, or 106 days after the petition was filed. The deed from Banks R. Preston to Mary Jo Davis is dated May 28, 1946, or 49 days after Lucille filed her petition for divorce, and 57 days before the decree of divorce was entered.

Lucille Preston in her answer and cross-petition in this case alleges that notice by publication in the divorce action was commenced within 60 days from the date of the filing of the petition. The decree of divorce does not recite service by publication or otherwise. It recited jurisdiction by appearance of both parties and the petition of plaintiff and the answer of defendant. There is no proof in this case that summons was served or the first publication made in the divorce action of Lucille Preston against Banks R. Preston within 60 days after the petition was filed. Neither does the evidence in the case show when the defendant's answer in the divorce case was filed, so in this case defendant Lucille Preston wholly failed to prove that notice necessary to set in motion the provisions of 12 O.S. 1941 §180, which is relied upon by her. Banks R. Preston had parted with whatever right, title or interest he had in the premises before the decree awarding his supposed interest to Lucille as alimony. It is the ... re unnecessary to consider the que... on as to whether the provisions of ... O.S. 1941 §180 apply to a divorce act... or the question of whether plaintiff ... d her predecessor in title acqui... title as against Banks R. Preston ... prescription.

Affirmed.

WELCH, CORN, GIBSON, and JOHNSON, JJ., concur. LUTTRELL and HALLEY, JJ., dissent.