**PEPPERS REFINING COMPANY, a corporation, Plaintiff in Error,**

v.

**Helen C. SPIVEY, Defendant in Error.**

No. 36664.

Supreme Court of Oklahoma.

July 19, 1955.

thereby permitting large quantities of salt water to spread over her property; about June 16, 1952 the resulting permanent damage became apparent by reason of large trees, grass and shrubbery dying, as well as new grass which had been planted in June 1951, failing to grow; condition necessitated removal of 5 large shade trees which had died as a result of salt water pollution of the soil; in February 1953, this line again burst and flooded the property thereby killing small amount of vegetation remaining; prior to escape of salt water, land was fertile and the trees and shrubs decorative, but resultant destruction had damaged property to the extent of $3000., the difference in value of the property before and after happenings complained of by plaintiff. A second cause of action sought recovery of cost of removal of dead trees, and also to recover cost of replacing gas lines into the property allegedly made necessary by escaping salt water. This latter portion of the second cause of action was dismissed by plaintiff during the trial.

Defendant's answer admitted ownership of the line, breaking of same in June, 1950, escape of some salt water onto plaintiff's property but that the line was repaired immediately and that plaintiff had knowledge both of the break and the escape of salt water into the soil. By way of defense defendant asserted that expert analysts had established, by tests (made in June 1951, July 1952, and March 1953), that the real cause of trees and shrubs dying was soil deficiency. Defendant denied liability for any loss claimed by plaintiff, or that the amount of damage was as alleged, and further plead the statute of limitations, 12 O.S.1951 § 95, subd. 3, in defense to the action.

The plaintiff replied by general denial. The issues thus presented were tried to a jury.

The evidence disclosed that defendant, in operating the oil well, flowed the salt water from the well to a disposal system by means of a 4 inch line underneath the earth which crossed plaintiff's property between the sidewalk and the curbing.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for plaintiff in error.

W. F. Wilson, Jr., Oklahoma City, for defendant in error.

CORN, Justice.

Plaintiff brought this action to recover damages for permanent injury to real property, alleged to have resulted by reason of defendant having permitted salt water to escape onto plaintiff's property.

Plaintiff alleged she was the owner of real property (Lots 4-8, Blk. 43, Maywood Addition) on Northeast 5th street in Oklahoma City, Oklahoma; she maintained thereon three houses, a garage apartment and three lower apartments as rental properties; defendant owned and operated an oil well located upon a portion of her property, and maintained a salt water disposal line crossing the front of the property; prior to July 1951, this line broke

In July, 1950, a tenant notified plaintiff of a wet place on one of the lots, and she then notified the city water department, in the belief a water line had broken. Upon inspection by the water department it was discovered that defendant's salt water line had broken. Plaintiff thereupon notified defendant, who repaired the break the same day. After making repairs defendant filled in new earth and set out Bermuda grass in the parking. However, at the date repaired the line had been leaking approximately three weeks; the earth sank at the point of the leak, and salt water flowed across the sidewalk and into the front yard of plaintiff's property, but did not reach the shrubbery surrounding the houses; thereafter the earth was covered with salt deposits.

In the spring of 1951 the grass failed to come up and it became apparent the shrubs and trees were dying. June 6, 1951, plaintiff complained to defendant that a large shade tree had died. The fifth and last shade tree died in the spring of 1952. Plaintiff filed this action April 2, 1953, seeking damages for the injuries sustained.

Defendant's evidence was that a metering device on the disposal line would disclose any break thereon within 8 hours time; there was no visible evidence of an excessive amount of fluid in the region of the break, but immediately upon being notified the break was repaired, the surrounding soil removed and the area filled in with new soil. Cross examination revealed there were two breaks in the line, one day apart, in this area. The white substance on top of the ground was gypsum which defendant spread, upon recommendation of soil experts, to counteract any salt in the soil. Defendant directed its evidence principally toward showing soil samples had been taken from the premises and subjected to extensive analysis by qualified experts. The testimony by such experts was that, although tests revealed the presence of some salt in the soil, the quantities were insufficient to kill the grass and trees; the nature of the soil was such that little lateral percolation could have occurred from the area of the break; the trees died by reason of excessive sand placed in the yards for children to play in, and because of lack of care and children's excessive abusive use of the trees; the shrubbery appeared to have been tramped down; it appeared there was such heavy traffic upon the grass, and it had so little care, that it could not grow; the salt water had little effect upon the land except where it actually got on the grass.

The jury returned a verdict in plaintiff's favor ($1,750) upon which the judgment appealed from was rendered. The issues urged as grounds for reversal of this judgment are presented under three propositions.

The first contention is that plaintiff's action was barred by the applicable statute of limitations, 12 O.S.1951 § 95, subd. 3, which provides:

"Third. Within two years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

The argument is that plaintiff knew of the break in the line in May or June, 1950, and that large quantities of salt water ran down the parking on the front of her lots, and, likewise, that she knew damage to the soil resulted because the grass was killed. Thus, having knowledge that permanent injury resulted from this occurrence, plaintiff's action was barred by reason of not having been brought within the two year period provided by the statute, supra.

The rule is settled that an action to recover for damage to realty occasioned from the flowing of salt water thereon is an action for trespass to realty, and is governed by the two year statute of limitations, supra. Empire Gas & Fuel Co. v. Lindersmith, 131 Okl. 183, 268 P. 218; North v. Evans, 199 Okl. 284; 185 P.2d

901. However, it is an equally settled rule that the two year period of limitations does not commence to run against a cause of action for permanent damage to realty until the damage is apparent and it becomes obvious such damage is of a permanent character. H. F. Wilcox Oil & Gas Co. v. Juedeman, 187 Okl. 382, 101 P.2d 1050, and cases cited. And, the burden of establishing the bar of statute of limitations is upon the party asserting such defense. Warner v. Wickizer, 146 Okl. 232, 294 P. 130. The burden was upon defendant to prove plaintiff's action was barred by the statute. Shell Oil Co., Inc., v. Haunchild, 203 Okl. 456, 223 P.2d 333.

■ The record herein reflects defendant's failure to sustain the burden of proving the defense of the statute of limitations. It is true plaintiff testified she first knew of the break in the spring of 1950. However, there was no evidence to contradict or disprove the plaintiff's evidence that the permanent nature of the damage first became obvious in the spring of 1951. The authorities relied upon by defendant do not sustain the position urged. The apparent discrepancy in defendant's argument is that the cases cited do not announce a rule that the statute begins to run when *some* damage has been sustained. Rather, the cited cases adhere to the rule as announced in the Juedeman case, supra. See also North v. Evans, supra. And, further, the evidence was conflicting upon the issues as to when the injury became obvious. The question as to when the statute of limitations ran was a question of fact for the jury to determine. H. F. Wilcox Oil & Gas Co. v. Juedeman, supra; North v. Evans, supra; Murduck v. City of Blackwell, 198 Okl. 171, 176 P.2d 1002. The jury's determination of this question is reasonably supported by competent evidence.

Defendant next contends the evidence was insufficient to establish any causal connection between defendant's negligent act and the injury suffered by plaintiff. The basis of this contention is the argument the evidence was conflicting as to whether salt water was confined to the parking (curb to sidewalk), but that there was little conflict that if this did occur it was only in one or two limited areas. Whereas, defendant urges its evidence, disclosed by expert testimony, disclosed the only contamination of sufficient strength even to kill grass was in the immediate area of the leakage; that the trees and shrubs were not in this area, and the uncontroverted evidence of the experts showed the soil on plaintiff's property was not of a type conducive to lateral percolation of salt water, and that the water would not have traveled over 10 feet laterally in three to four years. Thus defendant argues the evidence reflected contamination at distance of from 30 to 175 feet away from the break, and the jury's inference that the water percolated 175 feet and injured the trees and shrubs necessarily resulted from "wildest speculation".

■ The jury was entitled to weigh the testimony of defendant's expert witnesses and accord such testimony the weight to which they deemed this evidence entitled. Midland Valley R. Co. v. Lowery, 207 Okl. 227, 248 P.2d 1042. The testimony of defendant's witnesses disclosed the soil samples, analysis of which provided the basis of these expert's opinions, were taken from the property in June, 1952, February, 1953 and March, 1954. Admittedly the break in defendant's line (July 1950) occurred nearly two years prior to the time the first sample was taken. Although such facts would not condemn the tests, and the expert opinions based thereon, as being so incomplete and inaccurate as to warrant rejection as evidence, the jury was entitled to consider such matters in determining the weight to be given such expert opinions. Midland Valley R. Co. v. Lowery, supra.

■ There was evidence, some of which was circumstantial in nature, sufficient to support the jury's finding that salt water escaping from defendant's pipe line caused plaintiff's damage. Such evidence need not rise to that degree of certainty which will exclude every other reasonable conclusion than that reached by the jury. See Cities Service Gas Co. v. Eggers, 186 Okl. 466, 98 P.2d 1114, 126 A.L.R. 1278,

and cases cited; West Edmond Hunton Lime Unit v. Lillard, Okl., 265 P.2d 730. Under the record the jury reasonably could find causal connection between the escape of salt water from defendant's line and the damage shown to have occurred to plaintiff's property, in view of the length of time the leak existed, the area covered by salt water, the fact the trees, shrubbery and grass were in good condition prior to the leak but died thereafter, and earlier than was to be expected under evidence relative to their usual life cycle. The jury was entitled to draw any reasonable inferences from the circumstances shown. Great Lakes Pipe Line Co. v. Smith, Okl., 271 P.2d 1112.

The final contention is that the judgment must be reversed because: (1) Of plaintiff's failure to prove the proper quantum of damages; (2) the court failed to instruct the jury as to the correct measure of damage. Defendant argues that the proper rule to be applied is the difference in value of the property immediately before the injury and immediately after the injury. See George v. Greer, 207 Okl. 494, 250 P.2d 858. That this is the general rule does not admit of argument. However, in applying this test the jury must consider the matter in the light of the condition and value of the property prior to the injury. And, in order to fix the value immediately after injury, the jury may consider evidence as to the entire effect of the injury, although the complete effects thereof were not manifested immediately, but gradually became more apparent.

Plaintiff offered the testimony of a real estate broker (John Eason), who testified that this property, at the time of trial, had a value of $14,000. The witness further testified the property would have a value of $17,500 if the trees, shrubbery and grass had not been killed but still were growing on the premises. Defendant asserts the evidence of value at the time of trial was not proper evidence to show value immediately after the injury, and a verdict based thereon was speculative, since there was no evidence showing what portion of this depreciated value was attributable to normal depreciation.

Evidence concerning the value at the time of trial, standing alone, would not be material. However, such evidence was important in that it enabled the jury to establish the amount of damage which gradually evidenced itself from and after the original injury. Without regard to the market value at the time of trial, there was evidence the property depreciated $3,500, in value on the open market by reason of the loss of trees, shrubbery and grass. The total loss to the property evidenced itself over a period of two to three years. However, the jury determined the cause of such loss was the salt water which escaped from defendant's line onto plaintiff's property in July, 1950. Under such circumstances the jury could have concluded that the total loss of value to the property existed immediately after the injury was sustained.

What is pointed out heretofore makes it unnecessary to consider that portion of the last contention, based as it is upon erroneous assumption plaintiff's evidence made no showing of value immediately before and immediately after the injury. It may be noted that in Pulaski Oil Co. v. Edwards, 92 Okl. 56, 217 P. 876, an instruction identical in substance with that given by the trial court in the present appeal was approved. Consideration of that case will reveal the similarity in the factual situation presented.

Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, DAVISON, HALLEY, and BLACKBIRD, JJ., concur.