Robie *v.* Sedgwick.

[MONROE GENERAL TERM, December 2, 1861. *Welles, Smith* and *Johnson,* Justices.]

———————◆———————

# ROBIE and others, Trustees of school district No. 5 in Bath, *vs.* SEDGWICK and HARDENBROOK.

Where plaintiffs sue as trustees of a corporation, in an action to recover the possession of real estate, it is necessary for them to show, not only the existence of the corporation, but title to the premises, in the corporation.

In this country corporations may exist by prescription, which presupposes an authorized and legitimate creation.

In an action by trustees of a school district, it appearing from the evidence that no record of the original organization of the district could be found, it was *held* that secondary or circumstantial evidence was admissible to show the creation and legal existence of the corporation.

And, it being admitted that the plaintiffs were trustees of the school district at the time of the commencement of the action, and proved that the usual powers pertaining to school districts in the several towns of the state — such as holding school meetings, choosing trustees, and causing a school to be kept, and school houses to be built — had been exercised by trustees, under the same name and title, and in the same locality, ever since the year 1819; it was *further held* that this was sufficient to raise the presumption that the district was duly organized, at an early day after such organizations were authorized, by the revised laws of 1813.

And that it consequently had all the powers belonging to corporations of that character, and was capable of owning and holding real estate, suitable to the purposes and objects of its creation.

Twenty years' exclusive possession of land, by trustees of a school district, adverse and under claim of title, is sufficient to raise the presumption of a valid title in them, as against defendants who are confessedly without title.

A corporation may claim title by means of adverse possession, the same as an individual.

Robie *v.* Sedgwick.

The doctrine of abandonment, or non-user, applies only to easements, claimed by one in the land of another, and not to the title to the land itself.

Corporations take a fee simple in lands, for the purposes of alienation, but only a determinable fee for the purposes of enjoyment. But the fee, when once vested, is only determined by the dissolution of the corporation; in which case the reverter is to the original grantor or his heirs.

But the reverter may be defeated by a previous alienation in fee, by the corporation.

In order to defeat the title of a corporation, an adverse possession must be shown, as in other cases, for twenty years, from which a grant may be presumed.

THIS was an action to recover the possession of a lot of land in the village of Bath, Steuben county. The complaint was in the usual form, and the answer put in issue every material allegation in the complaint. The cause was tried at the circuit, before the judge, without a jury. Perez Gilmore was examined as a witness for the plaintiffs, and testified as follows: "I reside in Bath; I know the lot, a description of which was read from the complaint; I have known it since 1819; it was occupied for a school, which was the only school in the village; the building upon it was burned in 1822, or between that and 1825. There was another school house built about a year after upon the lot; it was occupied for school purposes up to 1849; it was burned down in 1849. The defendants were in possession in 1859; I think they had then been in possession five or six years until last fall, when their furnace burned up; I was trustee during some of the time; I know there was a school kept in the building, because I was employed to furnish the wood in 1821 and 1822; I attended school meetings held there in 1820, 1821 or 1822; I think I recollect when the meeting was held to raise the tax to build the red school house; I was at some of the meetings; I have attended meetings often. Judge Edwards was one trustee; I recollect that Lewis Biles and David Rumsey, sen. were trustees of that district many years ago." This testimony was objected to as irrelevant and immaterial until the plaintiffs should show the organization of school district No. 5, and that after such legal organization the school was kept

and maintained by such organization. His honor the judge stated it would certainly be necessary for the plaintiffs to show some organization, or how they came possessed of the premises, or connect themselves in some way with the title or possession, and his honor decided to receive the testimony subject to the objection.

On his cross-examination, the witness further testified: " There was a school house on this lot in 1819; there was a school kept there. The new school house was built in a year or two after the old one was burned; I recollect school meetings were held in the court house in relation to the erection of the new house; it was the only place we had for a school in the village; I do not recollect whether any notices were given of the meetings."

Reuben Robie, a witness for the plaintiffs, testified: " I have lived in the county 38 years; the building on the lot was occupied for a school when I first knew it; I think it was burned in 1824; the whole village of Bath was in one district; after the house was burned, it was divided into two districts; I attended school meetings in the old house before it was burned down; I recollect there being meetings there when I first came to the village after the red school house was built, in 1824; I know school meetings were held in it and trustees elected in the district, often; the red school house was standing when the new (union) school house was built. I attended school meetings in the old school house, or academy as it was called; I cannot recollect what was done at those meetings when I was present, or what I did. I recollect Dugald Cameron was elected trustee. The old school house or academy was a two story building; the upper story was occupied by the free masons for a lodge room; I have attended the meetings of the lodge; religious meetings were also held there; I have attended them."

Ansel J. McCall testified: " I am a trustee of school district No. 5 now. I do not know of any other district book than this, except a small book which I saw some years ago;

I saw this book, I supposed to be records, about 1845 ; I do not know what became of it or where it is now; I cannot state what that book contained; this book now produced contains all the records of the district I know of. I have seen a book in the town clerk's office containing a survey and descriptions of the different districts in the town of Bath. I have never seen any records of the district but this book produced, kept by the clerk, since 1846; this is the book containing records of the district, and all I know or have heard of."

David Rumsey testified as follows: "I have been a trustee of district No. 5 four or five years ; I have never seen any records of the district but this book produced, kept by the clerk, since 1846. This is the book containing the records of the district, and all I know or have heard of."

The plaintiffs' counsel then offered in evidence a book containing the proceedings and resolutions of school district No. 5, since 1846, to show that the plaintiffs were trustees, and also to prove a resolution of the district passed at a meeting on the 12th October, 1858. The book was objected to as evidence, until it was shown that school district No. 5 was legally organized, as the book or records offered furnished no such evidence. The objection was overruled, and the defendants excepted. The plaintiffs' counsel read from said records the proceedings of the annual meetings of said district, from which it appeared the plaintiffs were elected trustees of said district, and read in evidence from said book the following: "Oct. 12, 1858. Annual meeting. Mr. Trustee Rumsey then offered the following resolution : Resolved, That the trustees be and they are hereby authorized and empowered to make such disposition as they shall deem best for the interest of the district, of the right and interest of said district in and to the old school house lot on Steuben street, and for that purpose, that they take such measures as may be necessary to enable them to sell and dispose of such lot or the interest of the district therein." The defendants' counsel admitted

that the plaintiffs were acting as trustees of district No. 5 in Bath, in February, 1859, when this action was commenced.

The plaintiffs' counsel then offered in evidence a deed made and executed by Henry A. Townsend and wife to Dugald Cameron and others, the 29th day of December, 1812, properly acknowledged and recorded the same day, by which the premises in question were conveyed in fee to Dugald Cameron, Howell Bull, Luman Hopkins and Samuel S. Haight, " trustees of Bath school," and to " their successors in office;" habendum to the " parties of the second part and their successors in office."

The plaintiffs having rested, the defendants' counsel moved for a nonsuit. The court denied the motion, and the defendants excepted.

The defendants' counsel then offered in evidence a resolution passed by the taxable inhabitants of school district No. 5 in Bath, at a school meeting held in the union school house in Bath, on the 7th day of May, 1849, which the counsel read from the book of records as follows : " L. Biles moved that the trustees be directed to investigate the title to the old red school house site, and report the same to the next meeting, with their opinion on the subject of the disposal of the same, &c. Mr. Howell moved to amend, by substituting a committee instead of the trustees. The amendment was accepted, and the motion thus amended put and carried. Mr. McMaster moved that Edward Howell, David Rumsey and Washington Barnes be such committee; was put and carried." Washington Barnes, called as a witness by the defendants, testified as follows : " I made the investigation in pursuance of the resolution offered in evidence. I found on the records in the clerk's office the copy of the deed which has been read here by the plaintiffs, and I also found on the records in the clerk's office a later deed from Townsend to the trustees of the district, which conveyed the lot to the district, for the purposes of a common school and, from the best information I could get, I came to the conclusion that the district had no

title whatever to the lot; that the title was in the original grantees of Townsend and wife, or their heirs. I consulted with Mr. Howell, the other member of the committee, and he concurred with me. I made a verbal report at the next district meeting, of the result of my investigations, with my opinion, as I have here now stated I had found it. I do not know that there was any formal acceptance of the report, or that there was any formal action upon it. In 1844 I owned and moved upon the premises next adjoining the lot in controversy, on the east, and lived there till 1851. I was trustee during part of that time, and resigned. There was no school kept in the house on the lot after the winter of 1845, I think. There may have been a school in the summer of 1845. The house was unoccupied for some years for school purposes. In the fall of 1849, after the house was burned, I entered into the possession of the lot and fenced it up. The house was burned in September, 1849. After I fenced the lot up with mine, I kept it until the summer of 1851, when I sold out to Whiting & McCall. I then gave them a quit-claim deed for the school house lot. They did not pay me any thing for that lot."

Ansel J. McCall, a witness for the defendants, testified as follows: " I occupied the premises in question, in company with others, openly and notoriously, from 1851 to 1856. The trustees of school district No. 5 during all that time made no claim upon me for the premises nor asserted any, that I know of. Wm. Howell was trustee of the district in 1849; I inquired of him, and he told me he thought the district had no title to the lot, from the report of the committee, and that was the reason why the lot was abandoned. The defendants are in possession of the premises, under a contract for the purchase of them from myself and Whiting."

The defendants' counsel then offered in evidence a quit-claim deed of the premises in question, made by Henry A. Townsend to George C. Edwards, Lewis Biles and Daniel G. Skinner, " trustees of school district number five in the town

Robie *v.* Sedgwick.

of Bath," on the 8th day of October, 1824, duly executed and acknowledged, and recorded in the clerks office of Steuben county, 11th day of October, 1824. The habendum was to the "parties of the second part and their successors, as a site for a school house, and for no other purpose." The testimony being closed, the case was summed up upon the law and the evidence; and the counsel for the defendants insisted that the plaintiffs were not entitled to recover, and asked the court to nonsuit the plaintiffs on a variety of grounds then stated, as well as upon the grounds stated when the motion was first made, and among others, upon the following grounds, in substance: That if the plaintiffs had ever held under any paper title whatever, it was under the deed of quit-claim, dated October 8th, A. D. 1824; and that having ceased to occupy the premises for the purposes of a district school, their title or right to the same had been lost, or had become extinguished; and on the further ground, that any right they might have acquired by possession had been lost by their having abandoned the premises; and that if the plaintiffs were entitled to recover under the deed from Townsend and wife to Cameron and others, they could only recover so much of the lot as was opposite to the southeast corner of the the academy building, as it stood at the time the deed was executed; and that the plaintiffs were bound to show by testimony where that point was, so as to identify the land they had a right to recover.

The court gave judgment for the plaintiffs, and decided that they were entitled to recover the premises described in the complaint. The defendants appealed to the general term.

*A. J. McCall,* for the appellants.

*R. B. Van Valkenburgh,* for the respondents.

*By the Court,* JOHNSON, J.   This cause was tried, and the decision of the justice before whom the trial was had was

filed, as appears from the case, on the 13th of April, 1860. The amendment to § 267 of the code, requiring a statement of the facts found, and the conclusions of law to be stated in such decision, separately, was not passed until the 16th of April, 1860. There is, therefore, no error apparent upon the face of the record.

This being an action of ejectment, the plaintiffs must recover, if at all, upon the strength of their own title. Hence it was necessary for them to show, not only the existence of the corporation, of which they claimed to be trustees, but title to the premises in question also, in such corporation.

The plaintiffs, upon the trial, gave no direct evidence of the creation of any such corporate body as school district No. 5, in the town of Bath, at any time, and it remains to be seen whether the secondary or circumstantial evidence produced is sufficient to warrant the inference of the creation and legal existence of the corporation.

There seems to be no doubt that in this country corporations of this description may exist by prescription, which presupposes an authorized and legitimate creation. (2 *Kent's Com.* 277. *Angell & Ames on Corp.* 57. *Dillingham* v. *Snow,* 7 *Mass. Rep.* 547. *Stockbridge* v. *West Stockbridge,* 12 *id.* 400.) The evidence here is presumptive only, but that may be resorted to where the record containing the direct evidence cannot be produced. The evidence shows, I think, that no record, of the original organization of this district, can be found. It was admitted, by the defendants' counsel, that the plaintiffs were trustees of school district No. 5, in the town of Bath, at the time of the commencement of this action. It was also proved on the part of the plaintiffs that the usual powers pertaining to ordinary school districts, in the several towns of the state, have been exercised by trustees by this name and title, and in the same locality, ever since 1819. School meetings have been held, trustees chosen, a school kept and school houses built, as appears, in the ordinary manner. This, I think, is abundantly sufficient to raise the

presumption that the district was duly organized, at an early day after such organizations were authorized by the revised laws of 1813, more than forty years before the commencement of the action.

The presumption being that the district was duly organized, and had a legal corporate existence, the further inference of course follows, that it had all the powers belonging to corporations of that character, and was capable of owning and holding real estate, suitable to the purposes and objects of its creation.

The question then arises, whether the plaintiffs' evidence was sufficient to establish a title to the premises in them, as trustees of the district. I do not see that the conveyances produced and proved upon the trial afford any evidence whatever of such title. The first conveyance, which bears date the 29th of December, 1812, is not to the trustees of this district, but to four individuals, who are designated therein, as "trustees of Bath school." This was before there was any statute authorizing the division of towns into school districts, in this state, and no privity, or connection whatever, is shown between the grantees in this conveyance, and the trustees of school district No. 5, which district must have been subsequently organized. This conveyance appears by the case to have been introduced by the plaintiffs, as part of their evidence of title. The second conveyance bears date the 28th of October, 1824, and is made by the same grantor who executed the first conveyance, to three persons designated as "trustees of school district number five in the town of Bath," and purports on its face to convey the premises therein described "as a site for a school house, and for no other purpose." At the time of the execution of this conveyance, it appears from the evidence that the grantor had no right or title to convey, and consequently the trustees took nothing by it. This conveyance was introduced, as appears, by the defendants as part of their defense. I confess I am unable to see why these conveyances should have been introduced, re-

spectively, by the parties who appear to have introduced them; as each, if it has any bearing upon the issue, tends to a conclusion adverse to the interests of the parties offering it.

It is suggested in the opinion at special term, that the first conveyance might operate as a dedication of the premises, to the inhabitants of the village of Bath, for school purposes. But I am unable to see how it is to operate as a dedication, and if it were so to operate, how the plaintiffs' title as trustees of district No. 5 could possibly be aided by it. It is an absolute and unqualified grant of the entire title, to the four grantees named, and their successors in office forever. There being at the time no such incorporation as the " Bath School," there was no capacity to take by grant in succession, and the incorporation which gives capacity must precede the grant of the land. (10 *Co. R.* 26 *b. Jackson* v. *Cory,* 8 *John.* 385. *Hornbeck* v. *Westbrook,* 9 *id.* 73.)

The title must therefore of necessity have vested in the individual grantees. It does not appear however that these grantees ever took or held possession of the premises, under this grant. On the contrary, the evidence shows that for several years prior to 1824 a two story building stood upon the premises, the lower story of which was occupied and used for a district school, of the district in question, and the upper story by the society of free masons. About the last named period this building was burned down, and a school house was erected by the trustees of this district, which was occupied exclusively for the purposes of a district school, up to the summer of 1845. This building was burned down in 1849. Here then is a period of at least twenty years, of exclusive possession, by the trustees of this district; and that it was adverse, and under claim of title, is apparent from the fact that they built upon it, and also from the fact that they took the conveyance of it from Townsend in October, 1824. This is clearly sufficient to raise the presumption of a valid title in the plaintiffs, as against the defendants, who are con-

fessedly without title. A corporation may claim title by means of adverse possession, the same as an individual, and this too, as has been held, even when it is incapable of taking by grant. (*Humbert* v. *Trinity Church*, 24 *Wend.* 587. *Bogardus* v. *Trinity Church*, 4 *Sandf. Ch.* 633.)

But it is contended on the part of the defendants that if the plaintiffs, or their predecessors in office, ever had the title as claimed, they have lost it, by abandoning the premises, and permitting others to occupy and use them, for other purposes, and in hostility to their claim of title. This doctrine of abandonment, or non-user, applies, as I understand it, only to easements, claimed by one in the land of another, and in no respect to the title to the land itself. And in case of easements, the general doctrine seems to be well settled, that the right is not extinguished short of an entire abandonment for the period of twenty years. (3 *Kent's Com.* 448. *Miller* v. *Garlock*, 8 *Barb.* 153. *Hammond* v. *Zehner*, 23 *id.* 475.) Corporations take a fee simple in lands, for the purposes of alienation, but only a determinable fee for the purposes of enjoyment. But the fee, whenever vested, is only determined by the dissolution of the corporation. In that case the reverter is to the original grantor, or his heirs, but this may be defeated by alienation in fee by the corporation, before dissolution. (2 *Kent's Com.* 282.) In order to defeat the title of a corporation, an adverse possession must be shown, as in other cases, for twenty years, from which a grant may be presumed.

The conclusion therefore is, that the judgment at special term was right, and should be affirmed.

[MONROE GENERAL TERM, December 2, 1861. *Welles, Smith* and *Johnson,* Justices.]