## KEELER v. McNEIR et al.

No. 28566. Jan. 17, 1939.

A. O. Harrison, for plaintiff in error.

Rowland & Talbott, for defendants in error.

DANNER, J. This is an action to quiet title, brought by Kenneth E. Keeler, owner of an undivided one-half interest in a tract of land, against Forest W. McNeir and George Paschal McNeir, owners of the other undivided one-half interest. The latter occupied the position of interveners in the action, but for purposes of clarity we shall refer to them as the defendants. The trial judge held in favor of the defendants, decreeing them to be the owners of an undivided one-half interest in the land (each being owner of an undivided one-fourth interest), and the plaintiff to be owner of an undivided one-half interest instead of the entire title. The plaintiff appeals.

The land was originally owned by Ridge Paschal, a full-blood Cherokee Indian, to whom it had been allotted by the government. When he died intestate on February 2, 1907, the title descended in two branches, each being an undivided one-half interest, which have never since become reunited in the same person.

Considering first the right-hand branch of the title, diagrammatically speaking: Ridge Paschal left surviving him one sister, Agnes Paschal McNeir, and the parties agree that she inherited an undivided one-half interest in the land. She died intestate in the state of Texas on March 15, 1928, leaving as her sole heirs Forest W. McNeir and George Paschal McNeir, the defendants, who inherited said undivided one-half interest, or an undivided one-fourth each.

Stating now the devolution of the left-hand branch of the title: In addition to the aforesaid Agnes Paschal McNeir, Ridge Paschal also left surviving him one brother, George W. Paschal, and it is agreed that George W. Paschal inherited the other undivided one-half of the estate. On July 5, 1912, George W. Paschal conveyed said undivided one-half interest to H. M. Brent, by warranty deed, expressly stating it to be an undivided one-half interest. H. M. Brent died in January of 1927, and his administrators on January 17, 1928, conveyed by administrators' deed to C. M. Keefer "all the right, title, interest and estate of the said H. M. Brent, deceased," in the said land. On March 12, 1928, C. M. Keefer conveyed, or attempted to convey, to Kenneth E. Keeler, plaintiff, by warranty deed, the entire title in and to the land. There are certain other facts which will be stated as the discussion progresses.

In appealing, the first contention of the plaintiff is that the evidence showed actual title to Agnes Paschal McNeir's undivided half interest passed from her to H. M. Brent, by deed, in about the year 1920, and that thus H. M. Brent, plaintiff's remote grantor, acquired the full title in that manner. No deed was recorded. No witness testified that he had ever seen or heard of such a deed. It was testified that H. M. Brent prior to his death told one or two of his personal acquaintances that he had "bought" the other undivided half interest. He did not tell them that he had obtained a deed. This evidence was objected to as being hearsay, but the trial judge, acting without a jury, received it anyway. Without regard to the question of admissibility of such testimony, we believe that the trial judge must correctly have considered it very weak, if of any value at all, in establishing the contention of plaintiff that Brent had acquired title by deed from Mrs. McNeir. It was shown by other evidence that H. M. Brent was a banker and business man of great experience who beyond doubt would have recorded such a deed had he received one; that Mrs. McNeir had been totally blind since 1912; that her affairs were managed entirely by one of the defendants, who testified that if such a deed had been executed, he would have known of it.

It is also said by plaintiff that Brent "acted" as if he had full title in paying the taxes. Inasmuch as he was receiving the entire income from the land, and paying no rent, the payment of taxes would not necessarily indicate that he had received a deed covering the other undivided half interest. It is also observed by the plaintiff that the defendants, too, "acted" as if a deed had been given by their mother to Brent, in that they had never shown any interest or made any inquiry about the land. The defendants testified that they had for a long while con-

sidered the land of no value, and for that reason had neglected to make inquiries.

If Mrs. McNeir at some time actually passed fee-simple title, in and to her undivided half interest, to H. M. Brent, by means of a deed duly executed by her, the burden of so showing was on the plaintiff. It should be obvious that in view of the foregoing state of the evidence we cannot say that the trial judge erred in refusing to arrive at the conclusion that she did so convey.

Plaintiff's second proposition is that title to the McNeir undivided half-interest was lost by abandonment. He observes that neither Mrs. McNeir nor either of her two sons (defendants) ever saw the land, or paid any taxes on it, or received any rent from it, or asserted by word or act any interest in the land. And he points out that when their mother's estate was divided in 1928 the defendants did not include this land as a part of the assets. From this it is argued that an abandonment occurred, citing 1 C. J. S. 8, 9, 18, and 19 to the general effect that the elements necessary to constitute abandonment are an intention to abandon, coupled with an external act or an omission to act, by which such intention is carried into effect.

Although the doctrine of abandonment may in some cases be applied to inchoate or equitable rights in real estate, it is never applied to a perfect fee-simple title, except as an incident of divesture by estoppel or as working into and being sometimes a part of the process wherein another acquires title by adverse possession. As stated in Arnold v. Crammer (Pa. Super.) 41 P.2d 8, 13:

"Abandonment as to a perfect title could only be affirmed on a state of facts sufficient to raise an estoppel or where possession has been acquired and held under a claim of title by limitation."

We shall consider the question of title by adverse possession in a later part of this opinion. We are now considering only the question of whether the title could be lost by the doctrine of abandonment alone. In Trustees of the Caledonia County Grammar School v. Kent (Vt.) 77 Atl. 877, it was said:

"A full legal title thereto can be divested by abandonment only when the circumstances thereof are sufficient to raise an estoppel to assert title, or when possession is acquired by one in consequence of the abandonment, and held under a claim of right for the statutory period of limitation."

We therefore see that in the absence of estoppel, which was not raised in this case, and title by adverse possession, which is hereinafter considered, fee-simple title is never lost by mere abandonment such as occurs in losing title to personal property or incorporeal rights in real property. Among the many authorities to that effect are the following: 1 Am. Jur. 5; 1 R. C. L. 3; Annotations at 135 Am. St. Rep. 890 and 19 Ann. Cas. 375; 1 C. J. 10; 1 C. J. S. 14; Lindblom v. Rocks, 146 Fed. 660, 77 C. C. A. 86; East Tennessee Iron, etc., Co. v. Wiggin, 68 Fed. 446, 15 C. C. A. 510; Carmichael v. Arkansas Lumber Co. (Ark.) 152 S. W. 286; Northern Assurance Co. v. Stout, 16 Cal. App. 548, 117 P. 617; Tarver v. Deppen, 132 Ga. 798, 804, 65 S. E. 177, 24 L. R. A. (N. S.) 1161 and note; Barrett v. Kansas, etc., Coal Co., 70 Kan. 649, 79 P. 150; Glynn v. Maxfield, 75 N. H. 482, 76 A. 196; Robie v. Sedgwick, 35 Barb. 319; Sharkey v. Candiani, 48 Ore. 112, 85 P. 219, 7 L. R. A. (N. S.) 791; Kreamer v. Voneida, 213 Pa. 74, 62 Atl. 518; Philadelphia v. Riddle, 25 Pa. 259; Arnold v. Cramer, 41 Pa. Super. 8; Parks v. Pennsylvania R. Co., 301 Pa. 475, 152 Atl. 682; Bear Valley Coal Co. v. Dewart, 95 Pa. 72; Calloway v. Sanford (Tenn. Ch. App.) 35 S. W. 776; Southern Coal & Iron Co. v. Schwoon, 145 Tenn. 191, 239 S. W. 398; Sowles v. Minot, 82 Vt. 344, 355, 73 Atl. 1025, 137 Am. St. Rep. 1010 and note; Perkins v. Blood, 36 Vt. 273; Doe v. Craft, 3 N. B. 546; White v. Shippee (Mass.) 102 N. E. 948; Sandy River Coal Co. v. Champion Bridge Co., 243 Ky. 424, 48 S. W.2d 1062; Cox v. Colossal Cavern Co., 210 Ky. 612, 276 S. W. 540; Powell v. Bowen, 279 Mo. 280, 214 S. W. 142, judgment set aside and reinstated April 1, 1920, case reargued May 10, 1920, and on May 18, 1920, former opinion again adopted; Allen v. West Lumber Co. (Tex. Com. App.) 244 S. W. 499, reversing (Civ. App.) 223 S. W. 529.

Finally, the plaintiff contends that title to the other one-half interest has passed to him by the doctrine of adverse possession. The period of limitation for acquiring title to real property by adverse possession in this state is 15 years. Section 99, O. S. 1931, 12 Okla. St. Ann. sec. 93. This suit was filed in 1936, so that adverse possession would have had to begin not later than 1921. The plaintiff points out that Mrs. McNeir's brother, George W. Paschal, conveyed a one-half undivided interest in the land to Brent in 1912; that Brent entered into exclusive possession of the land, and stated to others as early as 1919 or 1920 that he owned the complete and entire title. Plaintiff further draws attention to the fact that Brent always had the exclusive possession of the place, paid all the taxes, collected and kept the income, and in general acted as if he

were the owner of the entire fee-simple title. Further, that neither Mrs. McNeir nor her sons, the defendants, ever heretofore asserted any rights in the land.

Before discussing the legal significance of the facts it should be noted that the evidence does not bear out the contention that H. M. Brent ever publicly held out that he was owner of the entire title. The record does indicate that he told two of his personal acquaintances, privately, that he had bought Mrs. McNeir's half interest.

When Ridge Paschal died and the land descended to George W. Paschal and Mrs. McNeir, in equal shares, and George W. Paschal entered into the possession thereof, they were tenants in common. Likewise, when George W. Paschal conveyed to H. M. Brent, then Brent was a tenant in common with Mrs. McNeir. Brent was the tenant in common in possession and Mrs. McNeir was the tenant in common not in possession. Under those circumstances the principle is well settled that the tenant in possession is deemed to be holding said possession for himself and for the tenant who is not in possession. The possession of the one is constructively possession for the other. Thus it is that the mere holding of possession, by one tenant, can never be considered adverse to his cotenant until there is some act or conduct on his part which must give the other cotenant notice that his title has been repudiated or is disputed by the one in possession; or there must be such conduct by the tenant in possession as reasonably would put the other tenant on inquiry. Such has been the rule in this state in a long line of cases. In Choteau v. Choteau, 49 Okla. 105, 152 P. 373, it was stated in the second syllabus:

"The mere possession of a tenant in common, no matter how full and complete, does not operate as an ouster of his cotenant, or amount to adverse possession as against the claim of his cotenant. There must be something to show a denial or repudiation of his cotenant's rights, or the possession will be deemed to be held in subordination to the rights of the cotenant."

The following was said in the syllabus to Baldridge v. Caulk, 110 Okla. 185, 237 P. 453:

"The possession by one common tenant, where lands are owned by tenants in common, must be referred to the common title, and, in order to set in motion the statute of limitations, sufficient facts must appear to disclose a repudiation of the title of the cotenants. In the absence of such repudiation of the title of the cotenants, possession will not be deemed adverse to the common title."

In Beaver v. Wilson, 117 Okla. 68, 245 P. 34, we said:

"The statute of limitations does not begin to run in favor of one cotenant of land in possession, against another cotenant thereof, until actual ouster by the former or some other act or acts on his part amounting to a total denial of the rights of the latter, and until notice or knowledge of the act or acts relied on as an ouster is brought home to him.

"The notice or knowledge required must be either actual, or act or acts relied on as an ouster must be of such an open and notorious character as to be notice of themselves, or reasonably sufficient to put the disseized cotenant on inquiry, which, if diligently pursued, will lead to notice or knowledge of the fact."

Clearly, it cannot be said in this case that any such notice was brought home to the defendants or their mother, or that any conduct of Brent was shown which would put either or any of them upon inquiry.

In Ludey v. Pure Oil Co., 157 Okla. 1, 11 P.2d 102, we went so far as to say that there must be an actual ouster by the tenant in common asserting the statute. In many respects the present case is similar to Coats v. Riley, 154 Okla. 291, 7 P.2d 644, wherein the general rule was announced.

On the other hand, where the tenant in possession has done some act which satisfies the aforesaid requirements, such as refusing to account to his cotenant, or openly repudiates the relation of cotenancy between them, or in an ejectment action between them contests his cotenant's title, we have held that it starts the statute running, and is the beginning of adverse possession. Such a case is Kelly v. Dierks, 131 Okla. 217, 268 P. 193. Another such instance was Wirick v. Nance, 178 Okla. 180, 62 P.2d 997, wherein it was held that a denial or repudiation of the other cotenant's claim or title had been shown by clear and positive proof, that under such circumstances the tenant in common so repudiating, and being in possession, was holding adversely to his fellow tenant. In that decision many of our former opinions were reviewed and discussed.

We believe that further discussion is unnecessary. There is simply an absence of evidence indicating any repudiating by Brent of the rights or title of his cotenant. He simply held possession, and, of course, being in possession, took the profits and paid the taxes. And his statements to two of his personal acquaintances that he had bought her interest, whatever significance might be attached to them, were not such as would be calculated to have been brought to her attention. This is all the more true because she resided in the state of Texas, and would not be likely to hear of such statements.

We are of the opinion that the judgment of the trial court is correct and that it should be affirmed. It is so ordered.

BAYLESS, C. J., and RILEY, CORN, and HURST, JJ., concur.