Bob McCLAREN, Plaintiff in Error,

v.

Bryce STEELE, Jr., Dave Steele, Christine Steele, now Christine Steele Seaney, Nancy Steele, Tessie Grubbs, John Worst, Clara Bennett, Ely Worst and Minnie Howard, Defendants in Error.

No. 39138.

Supreme Court of Oklahoma.

Oct. 3, 1961.

Ogden & Ogden, Guymon, for plaintiff in error.

McMahan, Loofbourrow & Loofbourrow, Boise City, for defendants in error.

BERRY, Justice.

In 1933 John Steele died intestate. At the time of his death he owned the NW/4 of Sec. 1, T. 1N, R. 9E CM, Cimarron County, Oklahoma, and also an undivided one-half interest in the SE/4 of the above described section, which property is hereafter referred to as "land". The remaining interest in said SE/4 was owned by John Steele's brother, Bryce Steele. John Steele's interest in the land descended to his surviving brothers and sisters and the children of a deceased brother thus: an undivided 1/5th interest to Bryce Steele, Birdie McClaren, Bessie Worst and Dave Steele, and an undivided 1/10th interest to Christine Hall and Nancy Steele. The three persons last named appear here as defendants in error.

In 1936, Birdie McClaren died intestate. Her interest in the land descended in equal parts to her husband, Perry McClaren, and her son, Bob McClaren, who appears here as plaintiff in error. Bob McClaren will hereafter be referred to as "defendant".

In 1937, Bryce Steele died intestate. His interest in the land descended in equal parts to his surviving spouse, Minnie Howard, and his son, Bryce Steele, Jr., both of whom appear here as defendants in error. Bryce Steele, Jr., was the plaintiff below and will be referred to herein as "plaintiff".

In 1955, Bessie Worst died intestate. Her interest in the land descended in equal parts to John Worst, Ely Worst, Tessie Grubbs and Clara Bennett, all of whom appear here as defendants in error.

On October 13, 1945, defendant acquired a tax-sale certificate issued as a result of delinquent ad valorem taxes levied on the land for the years 1931 to 1941, inclusive. Thereafter, and on February 19, 1946, the tax certificate was surrendered by defendant and a tax deed was issued to him. After acquiring the tax deed, defendant took possession of the land for the first time and has since remained in possession of same.

On November 5, 1955, plaintiff instituted the instant action to establish his and all other interested persons' interest in the land; for partition of same, and as to defendant an accounting for rents and profits realized by defendant from the land. Defendant filed an answer and cross-petition in which he denied generally the allegations of plaintiff's petition, alleged that he acquired title to the land under the tax deed and prayed that his title be quieted as to plaintiff and those who asserted an adverse interest in the land. With the exception of Bob McClaren, all adverse claimants filed a joint answer and cross-petition in which they asserted that they owned stated undivided interests in the land, sought to have said interests established and their title quieted, and as to defendant sought an ac-

counting for rents and profits that he had realized from the land. The claims of those seeking affirmative relief as to defendant were predicated upon the proposition that in securing the tax deed defendant, as their co-tenant, only paid delinquent ad valorem taxes.

Following trial of case to the court, judgment was entered in favor of defendants in error. The significant finding of the court was that defendant "was a co-tenant with plaintiff and the other co-defendants at the time he acquired Tax Deeds to said property, and that therefore, said Tax Deeds were but a mode of paying the taxes, and that any interest acquired under said Tax Deeds is held in trust for the use and benefit of all the respective owners of said land."

In the judgment, the interest of all parties in the land was established; the amount of rents and profits realized by defendant from use of the land was determined; the value of permanent improvements made on the land by defendant and the amount of taxes paid by defendant from 1931 to 1958 were also determined, and the precise amount of defendant's accounting to defendants in error was determined. The court found that defendant had made known his intention to appeal from said judgment and it was stated in the Journal Entry of Judgment that for said reason defendants in error's request to partition of the land would be held in abeyance until this appeal was disposed of.

From order of the trial court denying defendant's motion for new trial, which was directed to the above referred-to judgment, defendant perfected this appeal.

Defendant's claim of error on the trial court's part is that "Mere co-tenancy of itself unaccompanied by allegation of fact or proof of facts imposing a moral or legal obligation on the part of co-tenant buying at tax sale is insufficient to defeat rights of buying co-tenant"; that the general rule that a co-tenant may not acquire the interest of his co-tenants at a sale of the co-

tenancy property for taxes only applies where mutual trust and confidence places purchasing co-tenant under duty to pay taxes; that said rule "does not apply as to a co-tenant who takes an assignment from the county of a certificate after a sale of land for a tax due prior to his acquiring an interest in the land which he was under no duty to pay"; that the rule does not apply where the purchasing co-tenant is not in possession of the property or where the cotenants acquire title from separate sources and at different times.

■ It has long been settled law in this jurisdiction that one who is under a moral or legal obligation to pay ad valorem taxes is not in a position to become a purchaser at a sale for such taxes. See Brooks et al. v. Garner, 20 Okl. 236, 94 P. 694, 97 P. 995, and cases cited following ■ Taxation, Vol. 13, West's Okla.Dig.

■ We are of the opinion that following the death of defendant's ancestor, Birdie McClaren, defendant was under a legal duty to pay ad valorem taxes on the property in controversy (this duty, of course, rested on each co-tenant) and the fact that Birdie McClaren's personal representative was in possession of defendant's interest in said land from 1936 through 1941 did not serve to relieve defendant of said duty. In Warner et al. v. Day et al., 197 Okl. 319, 170 P.2d 246, 248, a co-owner who claimed title under a tax title, asserted that the rule laid down in Brooks et al. v. Garner, supra, and subsequent decisions to the same effect, was inapplicable because legal title to the property there involved was in a co-owner as his and another co-owner's trustee and that the trustee alone was under a legal duty to pay taxes on the property. In rejecting said contention, we said that "Though the legal title to the lots was in the name of E. S. Warner, as trustee, still Borum had an equitable interest therein, together with the other cestui ques, and by all of the authorities it was in all material aspects a taxable property interest so far as ad valorem taxation is con-

cerned"; and that "Under our statutes governing ad valorem taxation, there can be no question but that (the co-tenant who acquired the tax title) owned such an interest in the lots as to be deemed a taxpayer or owner of real estate". The fact that an owner of an interest in real property is out of possession does not relieve him of the legal duty to pay ad valorem taxes levied on the property. At p. 437, § 64(b) (2) Tenancy in Common 86 C.J.S., this is said:

"The rule precluding a tenant in common from strengthening his title through the acquisition of a tax title applies to a tenant in common who is not in possession and under no greater duty to pay taxes than his cotenant. * * *"

In the last cited case the co-owner who purchased the tax title made the further contention that he was not under a duty to his co-tenants to pay taxes and for said reason he, as to said co-tenants, acquired title by virtue of the tax deed. In rejecting said contention we had this to say in the body of the opinion:

"* * * Many courts, however, do not limit application of the rule to cases where the owner's duty to pay taxes is also an obligation he owes another in privity with him, but also apply the doctrine where the duty is only that of a taxpayer to the state. This court is one of the latter. Thus in Burnett et al. v. Cole et al., 193 Okl. 25, 140 P.2d 1012, 1013, it was said: 'Defendant contends that he owed plaintiff no duty to pay the taxes on the mineral estate. But the right to acquire a tax title against another does not always rest on the question of whether a duty is owed to such other person. Defendant at least had a duty to pay his own taxes, and the question is whether he may profit by neglecting his own duty.' "

See also Burnett et al. v. Cole et al., 193 Okl. 25, 140 P.2d 1012, and Colby v. Stevenson et al., Okl., 265 P.2d 477, 479.

In support of his contention that the fact that those claiming adversely to him acquired their title under a different ancestor makes inoperative the general rule to the effect that a co-tenant acquiring a tax title to joint-tenancy property may not thereby defeat the interest of his co-tenants, defendant refers to annotated notes beginning at page 874, 54 A.L.R. at page 886 of said notes authorities are cited to the general effect that the rule that the purchaser of an adverse interest inures to the benefit of his co-tenants applies only where all co-tenants "derive title by descent, devise or single conveyances from a common grantor". However, at page 889 of said notes the annotator states that "There is, however, a decided trend away from the views expressed in the preceding cases; the distinction based upon the circumstances under which the tenants in common acquired their title is ignored entirely by many courts, and the general rule which forbids one cotenant from acquiring title adverse to the other cotenants is ordinarily applied as readily in the one case as in the other. The distinction is expressly repudiated by some courts."

In cases which do not involve tax titles, the exception so relied upon by defendant appears to be based upon the proposition that a relationship of confidence and trust only exists between co-tenants where they have acquired title from a common source and that where said relationship does not exist, title acquired by a co-tenant will not be held to inure to the benefit of his co-tenants. The theory so applied is in effect the same theory that defendant advances to the effect that unless a co-tenant is under a moral obligation to pay taxes he is free to acquire a tax title to co-tenancy property. As heretofore pointed out, we have rejected said theory in tax-title cases and have held that where one is under a legal duty to pay taxes, a tax title that he acquires inures to the benefit of his co-tenants. In the tax-title cases cited in the referred-to annotation that tend to sustain defendant's contentions, the interests of the co-tenants

were separately assessed and it was therefore possible for each co-tenant to pay his taxes and thus avoid his interest in the co-tenancy property being sold for taxes. In the instant case, there was a blanket assessment of taxes for each year that taxes were permitted to become delinquent and it was, therefore, impossible for a co-tenant to redeem by satisfying taxes attributable only to his ownership.

We are of the conviction that irrespective of the source of the several co-tenants' title, each was under a legal duty to pay ad valorem taxes levied on the land; that for said reason a co-tenant could not acquire a tax title to the land that would serve to divest his fellow co-tenants of their interest therein.

We are unable to agree with defendant's contention to the effect that the general rule that one co-tenant may not acquire a tax title to the interest of his co-tenants does not apply because defendant took an assignment from the county of a certificate after sale of the land for taxes due, both prior to and following his acquiring an interest in the land.

As heretofore pointed out, the land was sold for delinquent taxes accruing for the years 1931 to 1941, inclusive. Defendant was under a legal duty to pay taxes for the latter portion of said period. In order to secure the tax title it was necessary to pay delinquent taxes for said latter years and the defendant in securing said title therefore paid taxes that he was under a duty to pay. The fact that defendant in acquiring the tax title first purchased a tax certificate is without significance. In Warner et al. v. Day et al., supra, we said, after referring to the rule upon which defendant here relies, that "the same principles apply where the owner purchases a tax certificate, as where he purchases at resale, except that where he becomes the assignee of the certificate, it is considered a redemption. Black, Tax Titles, 2nd Ed., sec. 317, p. 395. " In the cited case, the tax title was based upon a certificate as was the tax title in Akin et al. v. Loudder, 201 Okl. 47, 200 P.2d 763.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.