Bertha E. BOATMAN and Sam M. Boatman and Socony Mobil Oil Company, Inc., a corporation, Plaintiffs in Error,

v.

Burilla BEARD, Defendant in Error.

No. 41337.

Supreme Court of Oklahoma.

Jan. 31, 1967.

Rehearing Denied April 4, 1967.

Sparks, Boatman & Rizley, Woodward, S. M. Groom, Jr., Oklahoma City, for plaintiffs in error.

Marshall Word, Arnett, for defendant in error.

BERRY, Justice.

Burilla Beard was plaintiff in an equitable action against her sister, Bertha Boatman, (formerly Carr nee Allen) and other named defendants, to quiet title to an undivided 33/40th interest in a described quarter section of land in Ellis County, Oklahoma. Judgment was entered quieting title as prayed for by plaintiff. Defendant brought this appeal, which primarily concerns the rights of these two parties, hereafter referred to as they appeared in the trial court.

The issues for determination evolved from the factual background hereafter summarized, disclosed by the pleadings and evidence. The land was patented (November 23, 1911) by the United States to the heirs of Mary E. Edwards, who died intestate prior to patent, leaving five children as surviving heirs, each of whom owned an undivided 1/5th interest in the property. On October 13, 1924, one heir, Emma T. Carr, conveyed all of her interest in equal shares to her two daughters, the principal parties to this action. Subsequent to this conveyance Emma T. Carr inherited an additional 1/20th interest from a deceased brother. When she died intestate November 30, 1932, her surviving heirs at law were her husband and their two daughters, the parties in this action. Their father died intestate in 1946, and such interest as he owned passed in equal shares to plaintiff and defendant, as the survivors.

Prior to bringing this action three heirs of the common ancestor had died intestate, and their interests in the property had been inherited by certain direct and collateral heirs, all of whom were named as defendants. In 1962 plaintiff obtained quit claim deeds from each of such heirs, and upon these conveyances and her own inherited interest asserted ownership of an undivided 33/40th interest, the remaining 7/40th interest admittedly belonging to defendant.

Plaintiff's petition, which asserted two causes of action, deraigned her title substantially as stated, and alleged that de-

fendant was claiming right and title to the property by virtue of a resale tax deed recorded May 17, 1932, and that such deed was void because issued when defendant was a cotenant with plaintiff, and others then owning fractional interests in the land. Further, that the corporate defendant claimed some interest under an oil and gas lease from defendant, recorded June 24, 1955, and purportedly extended for ten years by a subsequently executed instrument. Plaintiff asked that such lease be decreed to cover only the interest (7/40th) of defendant; that defendant's claimed interest under the purported resale tax deed be declared void as a cloud upon plaintiff's title. Further relief was sought against other named defendants as to whom no issue is presented in this appeal. The amended second cause of action, which sought accounting of the rents and profits, and establishment of a lien against defendant's interest for the years subsequent to defendant's tax deed, was held in abeyance by appropriate order of the trial court.

Defendant's answer admitted the claim of fee simple ownership and actual, peaceable possession of the land under the resale tax deed, as well as the interest claimed by inheritance, but specifically denied plaintiff's claim. Defendant alleged that by "family understanding" only Emma T. Carr was to have any interest in the land, and the other heirs of the common ancestor (Mary E. Edwards) never claimed any interest therein; as the result of tax delinquencies defendant secured a resale tax deed of which plaintiff and all other defendants had both actual and constructive notice; having gone into actual, open, hostile, continuous and exclusive adverse possession defendant's title was perfected under both the five and fifteen year statutes of limitation; that the parties and parents knew of, and consented to, defendant's acquisition of title under the tax deed; plaintiff was guilty of laches because of long delay in asserting her claim, and thus was estopped by her acts and conduct; the deeds plaintiff had acquired from various purported heirs of the common ancestor were champertous and void and none of such heirs had any right, interest or title to this property.

By cross-petition defendant prayed judgment quieting her title against any and all parties who asserted any interest in the property adverse to defendant and her assigns.

The corporate defendant answered claiming ownership of a valid oil and gas lease executed by defendant as owner of fee simple title, and that plaintiff's claims as to defendant's leasehold estate were barred by the statute of limitations, and that plaintiff's claim against such lease be denied.

Plaintiff replied by general denials, and specifically alleged the parties were cotenants and both owed the moral and legal obligation to pay taxes; that defendant could not profit by her own neglect, and purchase at the tax sale constituted a fraud upon the cotenants.

Both parties were living with their families on the same street in Whittier, California, and visited one another nearly every day at the time the tax deed was executed. At this time the parents made their home with defendant. The evidence shows the land was subject to sale in 1932 for delinquent taxes. Defendant made arrangements with an abstracter in Arnett, Oklahoma, to purchase a tax deed in her name, and thereafter repaid such agent for all costs and expenses involved in the transaction. Although defendant testified this was discussed between them, plaintiff denied this and testified that defendant stated she would pay the taxes and plaintiff could pay her part later, but no adjustment was made of the matter. It is undisputed that defendant paid ad valorem taxes for all years from 1932–1961, inclusive, and rented the land for agricultural purposes, retaining the rents as her own. In 1946 defendant, joined by her then husband, executed an oil and gas lease on the property and retained the consideration. On June 12, 1956, the defendant, joined by her present husband, co-defendant Boatman, executed

a ten year extension of this lease and retained the consideration received. At no time up to commencement of this action did plaintiff, or other interested heirs claim a share of any rents or profits received by defendant.

Plaintiff testified she never asked defendant for any of the rents or lease money because she believed defendant's statement the property was in her name, but did not know this had been accomplished by means of the tax deed. Plaintiff first learned of defendant's claim in 1951 when visiting in Arnett in company with defendant, who stated that she wished to visit the abstract office " * * * to see about my land." Thereafter plaintiff told defendant if the land was sold she expected to participate by reason of being an heir. Plaintiff also denied existence of any "family agreement" that defendant was to take title to this property. There was evidence that plaintiff first learned of the resale tax deed in 1959 when visiting the abstract office in Arnett. All the evidence relative to knowledge of the time and nature of defendant's claim was conflicting, other than for undisputed testimony that neither plaintiff, nor others who were heirs, ever demanded division of rents and profits received and retained by defendant over the years.

The trial court heard the evidence and took the case under advisement, subject to filing of briefs by the parties. The court thereafter rendered a written finding of facts, statement of issues and conclusions of law, hereafter summarized.

The court found the facts of cotenancy, defendant's acquisition of the resale tax deed and declaration of her claim of ownership in 1950 or 1951, and that plaintiff learned of the tax deed in 1959 and brought this action in 1963; that the corporate defendant held an unexpired oil and gas lease executed by defendant; the parties had agreed that under Oklahoma law one cotenant under an obligation to pay taxes cannot obtain title as against another cotenant by purchasing a tax deed. The court concluded defendant's claim of fee simple

title based upon the resale tax deed could not be sustained.

Concerning defendant's claim of title based upon the theory of adverse possession, the court found defendant's evidence showed acquisition of the tax deed, payment of taxes, collection of agricultural rentals for which no others made claim, and defendant's execution of an oil and gas lease, all without anyone denying or disputing her ownership. The court further found that when the parties visited Arnett together in 1950 or 1951 there was such notice and sufficient ouster by defendant as would disclose hostile intent and actual adverse possession to plaintiff; that from and after that time defendant's adverse possession for the required statutory period would serve to vest title in defendant under 60 O.S.1961, § 333, providing for establishment of title by prescription. Upon this basis the court found the decisive issue involved the question whether the five year or the fifteen year statute of limitations provided under 12 O.S.1961, § 93(3) (4) applied.

The trial court concluded as a matter of law that defendant could not claim any benefit from the resale tax deed, and for this reason the five year statute of limitations would not apply. Having determined that there had not been notice and ouster sufficient to disclose defendant's hostile intent and actual possession adverse to plaintiff's right and title, prior to 1950 or 1951, the fifteen year statute would not apply. And, defendant's claim of laches likewise failed for the same reasons.

Judgment was rendered in conformity with the court's findings and conclusions, cancelling the resale tax deed and quieting plaintiff's title to the undivided 33/40th interest, vesting title to 7/40th in defendant, and decreeing that the oil and gas lease executed by defendant to Socony Mobil Oil Company, Inc., the corporate defendant, was a valid and subsisting lease as to defendant's interest, but not to any interest owned by plaintiff.

■ The defendant, and the corporate defendant, present four contentions as grounds for reversal of the judgment. To some degree each contention basically involves an attack upon the trial court's determination of facts as reflected by conflicting testimony, defendant's position being that the court's findings, and judgment based thereon, are against the clear weight of the evidence. It is axiomatic that in cases of equitable cognizance this Court examines the entire record and weighs the evidence, but will not disturb the trial court's judgment unless clearly against the weight of the evidence.

■ The first contention is that under proper circumstances one cotenant may hold adversely to his cotenants and thereby acquire title by adverse possession. This proposition is a statement of text law recognized generally. 3 Am.Jur.2d § 173; 82 A.R.L.2d 21. The contention is correct as an abstract proposition, but only when it clearly appears that the equally recognized conditions or qualifications which provide a basis for the rule are present.

■ The trial court based the judgment upon the rule stated in Westheimer v. Neustadt, Okl., 362 P.2d 110. Therein we held the statute of limitations did not begin to run in favor of one cotenant against others until actual ouster by the claiming cotenant, or other acts on his part amounting to total denial of the rights of others, and until notice or knowledge of the acts relied upon actually was brought home to them so as to show denial or repudiation of their rights.

Although stated in varying terms, this rule has been applied consistently in our decisions. In International Land Co. v. Smith, 103 Okl. 101, 229 P. 601, we said that to acquire title by limitation against his cotenants required some act of disseisin " * * * totally irreconcilable with a recognition of the rights of his cotenant."

Beaver v. Wilson, 117 Okl. 68, 245 P. 34, recognized that generally statutes of limitations operate upon causes of action between

cotenants to the same extent as between persons not bearing this relationship; and the ouster which was found to have destroyed the cotenancy resulted from the parties having been placed upon notice "by such indubitable repudiation of the cotenancy."

In Ludey v. Pure Oil Co. 157 Okl. 1, 11 P.2d 102, the statute of limitations was said to have no place in an action between cotenants for an accounting "in absence of a complete denial or ouster * * *."

In Records v. Miles, 200 Okl. 62, 191 P.2d 918, we quoted with approval from Akley v. Bassett, 189 Cal. 625, 209 P. 576, that to constitute ouster of a cotenant requires " * * * acts of the most open and notorious character, clearly giving notice to the world, and to all having occasion to observe the condition and occupancy of the property that the intention is to exclude, and does exclude the cotenant. * * *"

Although recognizing that one cotenant may hold adversely to his cotenants and acquire title by adverse possession, such right does not accrue, or come into being, until the qualifications to the rule have been satisfied.

■ Under whatever rule the evidence upon which the claimed disseisin may be tested, the controlling factor always must be whether notice of the asserted hostile holding by one cotenant is brought home to the other cotenants. The trial court's finding that the acts claimed by defendant to amount to ouster, notice and adverse possession did not reveal a repudiation of plaintiff's rights is not clearly against the weight of the evidence.

Defendants next contend that the court erred in decreeing the five year statute to be inapplicable. Defendants first assert that 12 O.S.1961, § 93(3), fixes five years as the period of limitation under either a void, or voidable, tax deed. Redwine v. King, Okl., 366 P.2d 921. On this basis defendants say the trial court erred in holding the five year statute inapplicable, because there is no logical reason for holding this statute applicable solely to actions based up-

on tax deeds. Upon this predicate defendants argue that the court erred because his findings and judgment required defendant (Boatman) to have a valid unforceable tax deed before the statute would begin to run. This argument is offered to support the conclusion that the true rule, as applied to cotenants, is the same as between strangers to the title: Thus any person who holds possession under a tax deed for five years secures a valid title against a former owner (cotenant) because it is the period of possession and not the tax deed which confers possession.

Defendants' ultimate conclusion is that when defendant recorded the tax deed, and acquired adverse possession with notice to plaintiff, the cotenancy relationship was repudiated and the parties stood as though no cotenancy ever existed; and, because the trial court found that defendant was adversely holding the land after 1950, or 1951 this satisfied the requirements for adverse possession and the five year statute of limitations must apply. It is asserted that this is the "logical" and "correct" legal principle, although admittedly no decisional law within this jurisdiction supports such reasoning.

 We are unimpressed by the reasoning urged to support the "logical" principle that defendant's acquisition of the tax deed and notice thereof to plaintiff (1950) destroyed the cotenancy and left the parties in the position of strangers as concerned this property. Neither are we impressed by authorities from other jurisdictions, which defendants cite in support of such principle. It is necessary only to point out that one under a moral or legal obligation to pay taxes cannot become a purchaser at tax sale and thereby acquire any interest antagonistic to his cotenant, since the purchase is merely a mode of paying taxes. Wilcox Oil Co. v. Schott, Okl., 327 P.2d 471; McClaren v. Steele, Okl., 365 P.2d 378. The trial court correctly decreed that defendant could not claim any benefit under the resale tax deed which made the five year statute of limitations applicable.

Under the third proposition defendants argue that not only was the five year statute applicable, but the trial court further erred in holding defendant failed to establish a prescriptive title under the fifteen year statute. The argument is that the great weight of the evidence shows plaintiff knew, or was charged with knowledge of defendant's claim of title from the time of acquisition of the tax deed (1932) up to the filing of this action. This contention simply advances the conclusion that the evidence showed notice and repudiation of the cotenants' rights in 1932, and continuous adverse possession thereafter. The trial court determined this issue against defendant. We have examined the record and weighed the evidence, and do not find the trial court's determination clearly against the weight of the evidence. In such cases the trial court's judgment is not to be disturbed on appeal. Goldsby v. Juricek, Okl., 403 P.2d 454.

Defendant further contends the trial court erred in holding that plaintiff acquired any title by virtue of the deeds from certain cotenants out of possession. It is argued that the sons of the common ancestor (Mary E. Edwards) "intended" for the land to go to Emma T. Carr, and after 1907 never evinced any interest in the property. Further that as to their heirs, the collateral kin from whom plaintiff secured deeds of their interest, the defendant's title by adverse possession, under the resale tax deed, had been perfected long before plaintiff acquired these deeds or filed this action. Defendants position is that, under the authority of Hurie v. Quigg, 121 Okl. 80, 247 P. 677, and other cases to the same effect, title may be held adversely as to some cotenants and not as to others. Thus, since some of the grantors of such deeds never had been in possession of the land defendant's adverse possession was sufficient to make such deeds void as against her claim of title.

Whether this argument finds its basis in the purported "family understanding," which defendant pled and attempted to

establish by her own testimony, or by reason of misconception of the nature of the relationship between the grantors (collateral kin) and the parties to this appeal, is not clear from the argument.

It is undisputed that these grantors were heirs of various children of the common ancestor, as were plaintiff and defendant. As heirs of fractional interests from their own respective parents they were tenants in common with plaintiff and defendant, who would have succeeded to their mother's interest even in absence of the deed from their mother under which they took title. Being cotenants, acquisition of the resale tax deed by defendant did not destroy the relationship. The authorities cited by defendant do not support the claim that, because the brothers agreed to let Emma Carr have the land, and because the brothers' heirs do not "appear to have considered they had any interest in the land," no notice or ouster was required before adverse possession under the tax deed began to run against them. See McClaren v. Steele, supra.

Judgment affirmed.

All the Justices concur.