Thomas TATUM et al., Plaintiffs in Error,

v.

Cecil JONES et al., Defendants in Error.

No. 43291.

Supreme Court of Oklahoma.

Nov. 30, 1971.

Fischl, Culp & McMillin, Ardmore, for plaintiffs in error.

Goins & Smith, Ardmore, for defendants in error.

McINERNEY, Justice.

Defendants, collateral heirs of Eldridge G. Tatum, appeal from a judgment quieting title in the devisees and lessee of Mary T. Tatum (plaintiffs). This judgment was based upon adverse possession by plaintiffs and their predecessors for a period of forty-six years. The evidence established that the predecessors of plaintiffs and defendants were tenants in common. Therefore, we must determine whether the evidence supports a finding of possession adverse to the cotenants.

The properties involved are the South 180.7 feet of Block 1 and Block 2 in the Town of Tatums, Oklahoma. The described portion of Block 1 was allotted and patented to Eldridge G. Tatum by the Choctaw and Chickasaw Nations, and Block 2 was allotted and patented to Eldridge G. Tatum and Lee B. Tatum, his brother. In 1911, Eldridge G. Tatum died intestate, single and without issue leaving two brothers and two sisters surviving him. One of the brothers was Lee B. Tatum; defendants are a son and the grandchildren of the other brother. After the death of Eldridge G. Tatum, L. B. Tatum, the same person as Lee B. Tatum, received in 1919 a resale tax deed to Lots 1 & 2 of Block 1 and Lot 2 of Block 2 in the Town of Tatums. Since that time, L. B. Tatum and his successors have been in possession of the properties involved. Mary T. Tatum was the wife of L. B. Tatum.

L. B. Tatum and his successors exercised exclusive control and management of the properties during the period of forty-six years when they were in possession. The properties were used for grazing cattle, either by L. B. Tatum and his successors or their lessee; Block 2, which had a pond on it, had also been used as a cow lot. Some fencing had been located on Block 1, but the evidence is not clear whether the South 180.7 feet had ever been completely enclosed by a fence. Except for the fencing, the South 180.7 feet of Block 1 had never been improved, and there had been no fencing on the lot for many years. A cow shed of undisclosed origin had been located on Block 2. The cow shed had been enclosed by a fence, but the evidence is not clear whether this fence or any other fence completely enclosed Block 2. The cow shed and part of the fencing disappeared several years ago.

Plaintiffs and their predecessors paid the ad valorem taxes on the properties, collected rents from the properties, mortgaged the South half of Block 2, executed oil and gas leases covering the properties and received bonuses for these oil and gas leases. Monies received under leases on these properties have been retained by plaintiffs and their predecessors without anyone ever demanding a share of these lease proceeds.

L. B. Tatum and his wife, Mary T., lived on Block 3 in the Town of Tatums for many years. According to the testimony of long-time residents of that community, L. B. Tatum and his wife were considered to be the owners of the properties involved; these witnesses did not know of any other person who had ever claimed an interest in the properties prior to this litigation. However, except for Thomas Tatum, none of the defendants or their predecessors have ever lived in the Town of Tatums. Thomas Tatum moved to the Town of Tatums, but the evidence

does not establish the length of his residency there.

■■■■ Before a tenant in common can acquire the interest of his cotenant by adverse possession, there must be an actual ouster of the cotenant or some act or acts sufficient to establish a repudiation of the rights of the cotenant. Absent some conduct which discloses a complete denial of the interest of a cotenant, exclusive possession by his cotenant is considered to be in subordination to his rights and does not amount to adverse possession. A cotenant must have actual notice or knowledge that his rights are being disputed before the statute of limitations will begin to run against him, or the acts or conduct relied upon to establish a denial or repudiation of a cotenants rights must be so inconsistent with his rights that he reasonably should inquire into the status of his interest in the property. Westheimer v. Neustadt, Okl., 362 P.2d 110, 111 (1961); Keeler v. McNeir, 184 Okl. 244, 247, 86 P.2d 1004, 1007–1008 (1939); Beaver v. Wilson, 117 Okl. 68, 70, 245 P. 34, 35 (1926).

In Westheimer v. Neustadt, supra, plaintiffs' predecessor had collected rents on the property for approximately 40 years, had paid taxes on the property and, about 30 to 35 years before trial, had told the lessee that he (plaintiffs' predecessor) owned the property. This Court held that these acts were insufficient to convey notice or knowledge of a denial or repudiation of the rights of the cotenant of plaintiffs' predecessor. 362 P.2d at 112. Therefore, this Court reversed the judgment of the trial court that plaintiffs' predecessor had acquired title by adverse possession.

Similarly, in Keeler v. McNeir, supra, plaintiff's predecessor had exclusive possession of the land, had paid all the taxes, had collected and retained the income from the property, had privately told two personal acquaintances that he owned the land, and had acted as if he were the owner. Plaintiff Keeler also emphasized defendants' failure to assert any rights in the land for a long period of time. Again, this Court held that the conduct of plaintiff's predecessor was not sufficient to amount to a repudiation of the interest of his cotenant; thus, plaintiff and his predecessor had not acquired the interest of defendants by adverse possession. 184 Okl. at 247, 86 P.2d at 1008.

A cotenant and his successors acquired the interest of their cotenants by adverse possession in Beaver v. Wilson, supra. However, in addition to leasing the land, collecting rents, fencing the property, paying taxes, and exercising exclusive possession and control, two predecessors of the cotenant claiming title by adverse possession had executed warranty deeds purporting to convey the entire tract. Execution and recordation of these deeds together with the other acts of ownership were held to be enough to give cotenants residing in the neighborhood notice of repudiation of their title. 117 Okl. at 70, 245 P. at 36. In the case now before the Court, plaintiffs' predecessors did not execute warranty deeds covering the properties involved.

In Preston v. Preston, 201 Okl. 555, 207 P.2d 313 (1949), plaintiff and her predecessor had collected rents, paid taxes and paving assessments, mortgaged the property, built a house and garage apartment on the land, and remodeled an existing house adding three rooms. Based upon the valuable and lasting improvements together with the other factors present, title was quieted in plaintiff against her cotenant defendants. There were no valuable and lasting improvements placed upon the properties involved in the case now before the Court.

In Caywood v. January, Okl., 455 P.2d 49 (1969), though the deed under which plaintiff claimed title was void because it had not been approved by either the Secretary of Interior or the county court, it had been executed by her cotenant defendants or their parents. In addition to the deed, plaintiff January built a new house, barn and granary on the property, managed and farmed the land, fenced it, mortgaged

it, leased it and collected rents. All these acts were performed with full knowledge of plaintiff January's cotenants who frequently visited in her home for varying lengths of time without ever asserting any interest in the land or the profits produced by it. We affirmed the judgment of the trial court in favor of plaintiff January; the judgment was based upon adverse possession. Many of the factors on which we relied in Caywood v. January, supra, are absent from the factual circumstances presented in the case under consideration.

 Plaintiffs argue that the resale tax deed enhances their position that their predecessors were holding the properties under color of title or claim of right. In McClaren v. Steele, Okl., 365 P.2d 378, 382 (1961), this Court held that a cotenant cannot acquire the interests of his cotenants when he pays delinquent ad valorem taxes and receives a tax deed to the property because he is under a legal duty to pay the taxes. Likewise, in Boatman v. Beard, Okl., 426 P.2d 349, 354 (1967), we held that a cotenant cannot benefit from his acquisition of a tax deed to the property. In Boatman, defendants relied on the tax deed, payment of taxes, collection of rents, and retention of the consideration for oil and gas leases to establish their title by adverse possession. The judgment of the trial court holding that these facts were insufficient to establish defendants' claim of title by adverse possession was affirmed. 426 P.2d at 355.

Plaintiffs cite Morris v. Wells, Okl., 381 P.2d 882 (1963), to support the judgment rendered in the present case. In Morris v. Wells, supra, plaintiff's predecessor was under no legal obligation to pay the taxes and was not a cotenant at the time he obtained the tax deed. The plaintiff's predecessor acquired full title to the property by adverse possession after the 15 year statute of limitations had run. The claim of adverse possession, based on these facts distinguishing it from the present case, was upheld.

 In a quiet title action, we must determine whether the judgment of the trial court is clearly against the weight of the evidence. Caywood v. January, Okl., 455 P.2d 49, 52 (1969); Boatman v. Beard, Okl., 426 P.2d 349, 353 (1967). In the case under consideration, the evidence must be sufficient to establish an ouster of the cotenants. Westheimer, supra. There is nothing in the record to indicate an ouster of the cotenants or actual knowledge on the part of any defendant or his predecessor that his interest in the properties was claimed adversely by plaintiffs or their predecessors. Nor were the acts of plaintiffs' predecessors sufficient to notify defendants' predecessors that their rights in the properties had been repudiated. The judgment of the trial court in quieting title in plaintiffs by adverse possession is against the clear weight of the evidence.

The judgment is reversed and the cause is remanded to the trial court to determine the respective interests of the parties in accord with the views herein expressed.

DAVISON, V. C. J., and WILLIAMS, JACKSON, IRWIN and LAVENDER, JJ., concur.

HODGES, J., dissents.